## John L. Terrell v. Sam Sparks, State Treasurer.

No. 2246. Decided March 22, 1911.

**Constitution—Appropriations—Officers—Contract with State—Mandamus.**

An Act of the Legislature appropriated money "for the purpose of paying any and all necessary expenses in bringing suits, or paying expenses in prosecuting suits," "to be expended under the direction of the Attorney-General by and with the approval of the Governor, and to be paid on warrants drawn by the Comptroller of the Public Accounts on vouchers approved by the Attorney-General." An emergency clause of the Act recited the inadequacy of existing provisions for the recovery of public lands of the State and the enforcement of Laws concerning the same, and the pendency of numerous suits for the recovery of land by the State. (Act of April 20, 1909, Laws, 31st Leg., p. 323.) Under this Act the Attorney-General, in December, 1910, made a contract in writing, with the written approval of the Governor, for the employment of and payment of a monthly salary to an attorney, for a period of eight months, to render professional services under the direction of the Attorney-General in enforcing any and all laws of the State, and to represent the State as special counsel in prosecuting twenty-one enumerated cases then pending for the recovery of public lands by the State, and other suits to be filed by the Attorney-General. In January, 1911, the Governor's elected successor entered on his office, and the Attorney-General, who was reelected, entered upon a new term. The special

counsel was paid for services under such contract to the end of January, 1911; but the Treasurer refused payment of the warrant for services rendered in February, 1911, drawn by the Comptroller upon a voucher approved by the Attorney-General, because the expenditure had not been approved by the Governor then in office. In an action by the special counsel for a writ of mandamus requiring the Treasurer to pay such warrant, it is held:

(1) The appropriation was for a purpose sufficiently specific to meet the requirements of article 8, section 6, of the Constitution.

(2) The employment of the special counsel did not confer upon him the official character of an Assistant Attorney-General, nor constitute him an officer of the State, and his continuance in employment did not depend upon the continuance of the terms of the Attorney-General or of the Governor who employed him.

(3) The written instrument in question would constitute a contract for the employment of the special counsel binding on the State, if it was such as was authorized by the terms of the statute.

(4) Under the rule that a power given by statute implies a power to do everything necessary to make it effectual, the Act in question authorized the Attorney-General, with the approval of the Governor, to make the contract in question.

(5) The Act having provided for the expenditure of the appropriation on warrants drawn by the Comptroller on vouchers approved by the Attorney-General, the approval of such warrant or the voucher upon which it was issued by the Governor then in office was not required, and the Treasurer had no right to refuse payment.

(6) The relator was entitled to writ of mandamus requiring the Treasurer to pay the warrant drawn for his services in February, 1911.    (Pp. 194-199.)

Original application by Terrell to the Supreme Court for writ of manadmus against the State Treasurer.

*V. L. Brooks* and *C. A. Leddy,* for relator.—Where the Constitution provides that no money shall be paid out of the treasury except on a warrant drawn therefor by the proper officer in pursuance of an appropriation made by law, mandamus will lie to compel the comptroller to draw a warrant for the payment of a valid claim for which the Legislature has made an appropriation, and will likewise lie to compel the treasurer to pay such warrant.    Homerich v. Hunter, 14 La. Ann., 225; Thomas v. Owens, 4 Maryland, 189; Weekman v. Bishop, 36 Mo., 49; Henderson v. Board, etc., 13 L. R. A., 169 and authorities cited in notes; State v. Kenney, 10 Mont., 485 (26 Pac. R., 197); State v. Grimes, 7 Wash., 191 (34 Pac. R., 833); 36 Cyc., 887.

Under the Act of the First Called Session of the Thirty-First Legislature approved April 20, 1909 (page 324), the Attorney-General has power in the name of the State to employ counsel to represent the State and to assist him in any suit where the State is a party, and it can not be questioned that the employment was necessary and for sufficient reasons.    State v. Buchanan, 62 S. W., 287; State v. Kesewetter, 45 Ohio St., 524; State v. Becker, 51 N. W., 1018; Ross v. Newman, 26 Texas, 134; State v. Mayes, 28 Miss. (6 Cushm.), 706; Touchard v. Crow, 20 Cal., 150; Calendar v. Olcott, 1 Mich., 134; 4 Cyc., 1028; Schmick v. Noll, 72 Texas, 1.

A contract made by State officers under statutory authority binds the State, and such authority need not be express but may be implied. Such contract will bind the State although not to be performed until after the expiration of such officer's term of office.    *36 Cyc., 862, 872,*

878; Lewis v. Colgan, 115 Cal., 529; State v. Buchanan (Tenn.), 62 S. W., 287; Brown v. State, 14 S. D., 219; Preston v. Walsh, 10 Fed., 315; Wait v. Ray, 67 N. Y., 36; Renbolt v. Schooltown of Noblesville, 73 N. E., 206 (Ind.); McCauley v. Brooks, Comptroller, 16 Cal., 11; 57 Atl., 950 (N. H.); Fetter Printing Co. v. Courier-Journal Ptg. Co., 47 S. W., 421 (Ky.); Gillis v. Space, 63 Barb., 179; Moore v. Garneau, 39 Neb., 511; State v. Horton, 21 Nev., 466; Danolds v. State, 42 Am. Rep., 277.

When both executive and legislative departments have by practical construction of the statute accepted and acted upon it as having a certain meaning, the conclusion so reached will be accorded great weight by the judiciary when called upon to construe the law and will in general control whenever the question is doubtful or open to reasonable doubt. Fairbanks v. United States, 181 U. S., 283; State v. McAlister, 88 Texas, 286; Levine v. U. S., 128 Fed., 826; City of Ft. Worth v. Davis, 57 Texas, 225; Nye v. Foreman, 74 N. E. 140, 125 Ill., 285; Wallace v. Board of Equalization, 86 Pac., 365; Endlich on Interpretation of Statutes, 499.

*N. A. Steadman,* for respondent.—Our Constitution by section 6 of article 8 provides that "No money shall be drawn from the treasury but in pursuance of specific appropriations made by law." That the appropriation was not specific: State v. Wallichs, 16 Neb., 679; Stratton v. Green, 45 Cal., 149.

The contract between the Attorney-General and the relator, seeking as it does to establish the right of the relator to compensation for services to be rendered to the State of Texas, violates section 44 of article 3 of the Constitution, which prescribes that the Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, since the Legislature did not provide by law for the compensation of relator.

If the Act of April 20, 1909, be construed to authorize the Attorney-General to fix the compensation of the relator, the Act violates section 44 of article 3 of the Constitution by attempting to delegate to the Attorney-General power which is expressly confined to the Legislature. State v. Rogers, 71 Ohio St., 203.

Irrespective of the question of the inability of the Legislature to delegate the authority conferred upon that body by section 44 of article 3, any attempt to empower the Attorney-General to fix the compensation of officers, servants or agents must be discountenanced and condemned, by reason of his being a member of the Executive Department of our Government, under section 1 of article 4 of the Constitution. State v. Rogers, 71 Ohio St., 203; Smith v. Strother, 68 Cal., 194.

The Act of April 20, 1909, does not purport or attempt to confer authority upon the Attorney-General to make the contract, since the language, "For the purpose of enforcing any and all laws of the State of Texas," is so indefinite that it can not be fairly construed to authorize the making of said contract, and since the provision following for the payment of expenses does not include the power to contract

for the payment of attorney's fees. Whitlow v. Whitlow, 60 S. W., 182; Thomas v. Jones, 84 Ala., 302; Ball v. Vason, 56 Ga., 262.

It would require clear statutory authority to permit the Attorney-General to enter into a contract for the performance by other persons of the duties incumbent upon him. Brome v. Cumming County, 47 N. W., 150; Board of Commissioners v. Jones, 51 Pac., 563; Frederick v. Douglas County, 71 N. W., 798.

A contract made by the Attorney-General to retain in his service a lawyer charged by the contract with the duties devolving upon the Attorney-General, is void as against public policy. Hager v. Colton, 16 Hun (N. Y.), 448.

The contract in question, if otherwise valid, expired when on January 16, 1911, the Honorable Jewel P. Lightfoot succeeded himself as Attorney-General, or if not then, when Honorable O. B. Colquitt as the successor of the Honorable T. M. Campbell, entered upon the duties of Governor on the 17th day of January, 1911. Hord v. State, 79 N. E., 916; Sheldon v. Board of Commissioners, 48 Kans., 356; First National Bank v. Beck, 43 Kans., 643; Milliken v. Edgar County, 142 Ill., 538; Morrison v. Board of Commissioners, 44 N. E., 65; Vacheron v. New York, 69 N. Y. Supp., 608; Hudson County v. Layton, 28 N. J. L., 244; State v. Platner, 43 Iowa, 140; Franklin v. Ranck, 9 Ohio C. C., 301; Board of Commissioners v. Taylor, 23 N. E., 752; Cyc. of Law & Procedure, Vol. 11, page 469 and Vol. 28, page 614; Brodie v. Campbell, 17 Cal., 11.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

At the first called session of the Thirty-First Legislature of the State of Texas this statute was enacted:

"Be it enacted by the Legislature of the State of Texas:

"Section 1. For the purpose of enforcing any and all laws of the State of Texas, and for the purpose of paying any and all necessary expenses in bringing suits or paying expenses in prosecuting same, there is hereby appropriated out of any money in the State Treasury, not otherwise appropriated, the sum of $25,000.00 or so much thereof as may be necessary, to be expended under the direction of the Attorney-General by and with the approval of the Governor, and to be paid upon warrants drawn by the Comptroller of Public Accounts on vouchers approved by the Attorney-General.

"Sec. 2. The fact that adequate provision has not been made for the recovery of lands belonging to the public schools and other lands of the State of Texas and for the enforcement of the laws of this State concerning public lands, the pendency of a great number of suits brought by the Attorney-General for the recovery of many thousands of acres of land embraced by the terms of this Act, which suits will come to trial in the near future, create an emergency and an imperative public necessity requiring that the constitutional rule which provides that bills shall be read on three several days be suspended and said rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted. Approved April 20, 1909."

On the 27th day of December, 1910, T. M. Campbell, being then

Governor of the State and Jewell P. Lightfoot being Attorney-General of the State of Texas, the following instrument was executed by the said officers and relator, Terrell:

"The State of Texas,
  County of Travis.
  "The presents witnesseth: That we, Jewel P. Lightfoot, Atttorney-General of the State of Texas, and John L. Terrell of the county of Dallas, State of Texas, have this day entered into the following contract and agreement, witnessing:

## I.

"That I, John L. Terrell, in consideration of the sum of One Thousand Six Hundred and Sixty-Six Dollars and Forty Cents ($1,666.40) to be paid to me by the State of Texas, in monthly installments of Two Hundred Eight Dollars and Thirty Cents ($208.30) on the last day of each month out of an appropriation made by the Legislature of the State of Texas under an Act approved April 20, 1909, entitled 'An Act making an appropriation for the enforcing of any and all laws of the State of Texas, and for the purpose of paying any and all necessary expenses in bringing and prosecuting suits or paying expenses in prosecuting same, providing the manner of expending such appropriation and declaring an emergency,' do hereby agree and obligate myself as follows:

"(a)  To render my professional services as an attorney at law under the direction of the Attorney-General of Texas in enforcing any and all laws of the State of Texas, beginning January 1, 1911, and ending August 31, 1911; and

"(b)  To represent the State of Texas as special counsel under the direction and control of the Attorney-General of Texas in the following suits now pending in the District Courts of Travis County, Texas, to wit:

| | |
|---|---|
| "No. 24873 | State of Texas v. W. D. Hart. |
| "No. 25341 | State v. Hosea L. Gallardo et al. |
| "No. 25384 | State v. Spencer Elza et al. |
| "No. 25383 | State v. Arthur Thomas et al. |
| "No. 25633 | State v. John Brown. |
| "No. 25635 | State v. Moses Jiner et al. |
| "No. 25638 | State v. Frank Mayfield et al. |
| "No. 25640 | State v. Gregario Biscano et al. |
| "No. 25643 | State v. David Chicom et al. |
| "No. 25645 | State v. David Olgin et al. |
| "No. 25647 | State v. Miguel Delgado. |
| "No. 25648 | Monico Delgado. |
| "No. 25650 | W. A. Mims et al. |
| "No. 25655 | S. Ardoil et al. |
| "No. 25656 | E. O. Lochousen et al. |
| "No. 25657 | G. C. Taylor. |
| "No. 25962 | H. C. McCarty. |
| "No. 25981 | Amanda Lincoln et al. |

"No. 2566   Ponciano Villaloboz et al.
"No. 965   Francisco Salario et al.
"No. 26027   Julia A. McLean et al.
"And such other and further suits as the Attorney-General may file for the enforcement of the laws. Such representation and service to be limited, however, to the life of this contract, i. e. until August 31, 1911.

II.

"That I, Jewel P. Lightfoot, Attorney-General of the State of Texas, in consideration of the foregoing agreement and obligation on the part of said John L. Terrell, do hereby appoint and employ the said John L. Terrell as special counsel to perform the services set out in paragraph one of this contract.
"Executed in duplicate, this the 27th day of December, A. D., 1910.
                              "John L. Terrell,
                              "Jewel P. Lightfoot,
                                      "Attorney-General of Texas."

"Being fully advised of the necessity requiring the execution of the foregoing contract, and same having been made with my consent, I do hereby approve same.
                              "T. M. Campbell,
                                  "Governor of Texas."

Relator, under this agreement, entered upon the discharge of his duties, and, for his compensation, at the end of the month of January, 1911, he received his voucher, which was approved by the Attorney-General, and warrant was issued by the Comptroller therefor, which warrant was paid, upon presentation, by the Respondent Sparks. For the month of February, 1911, relator received his voucher, approved by the Attorney-General, and warrant was duly issued by the Comptroller, but, upon presentation to the Respondent Sparks, it was refused payment.

Many questions have been presented and ably discussed by counsel on either side of this case, which we do not deem necessary to decide. We shall confine ourselves to the questions which we think are important in the determination of this particular case.

We are of the opinion that the Act of the Thirty-First Legislature which is copied above is sufficiently specific in making the appropriation therein mentioned and is not violative of section 6, article VIII of the Constitution.

The following questions of law, in our judgment, lay at the foundation of this case and are sufficient to determine the issues here presented.

1. Does the agreement between Terrell and the Attorney-General Lightfoot confer upon Terrell the official character of Assistant Attorney-General? If the effect of that agreement is to constitute Terrell an officer of the State, then his appointment and continuance in office would depend upon the continuance of the term of the Attorney-General, who appointed him, and his authority terminated when the

Attorney-General qualified for his succeeding term and Governor Campbell went out of office by reason of the succession of the present Governor. Hord v. The State, 79 N. W., 906. The case cited rests upon the proposition of law above stated and we think it was correctly decided. We recur to the question, does the agreement between Lightfoot and Terrell confer upon the latter the office of Assistant Attorney-General? We find in the instrument no words appropriate to the appointment of an official Assistant Attorney-General. The language expresses a contract of employment by the Attorney-General and the undertaking of Terrell is that of special counsel for a specific work. In the case of Hord v. The State, cited above, the Attorney-General first appointed Hord Assistant Attorney-General and then entered into a contract with him for compensation to be paid for the discharge of duties imposed by law upon that officer. In this case it is true that the duties to be performed are those which appertain to the office of Attorney-General, but the terms of the instrument by which Terrell is engaged are specific in placing him in the attitude of special counsel to assist the Attorney-General in the certain named cases and in other matters which may arise, limiting that employment to a time less than the official term. It does not appear that he took any oath of office or in any way did anything which would be required in order to qualify one for such position. We are of opinion that Terrell had no official relation to Lightfoot and that his contract did not terminate with the expiration of the term of office of the Governor and the Attorney-General.

2. We now come to the question, does the instrument before us constitute a contract between Terrell and the State? The language of the instrument is appropriate for expressing contractual relations and is inconsistent with any other. It mentions a definite consideration which is to be paid by the State for services to be rendered by Terrell to the State in a number of specified cases and also in other matters which might arise in the future. We conclude that the instrument here in controversy constitutes and embodies a contract between the relator and the State of Texas and is binding upon the State if authorized by the statute. 36 Cyc., 872, 78.

3. The next important question that arises in the case is, had Governor Campbell and Attorney-General Lightfoot authority under the statute to employ Terrell as special counsel to assist the Attorney-General in the prosecution of the cases named and other cases which might arise? The power to make the contract must be derived from the statute itself, therefore, we must construe its terms to ascertain whether or not that authority is given. For the rule of construction by which we are to be governed we copy from Sutherland on Statutory Construction, section 341, as follows:

"Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. It is a well established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted. Where

the law commands anything to be done it authorizes the performance of whatever may be necessary for executing its commands."

By the terms of the statute of the Thirty-First Legislature, before copied, the duty is imposed upon the Attorney-General and the power is conferred upon him to prosecute suits against those who are unlawfully claiming the public lands of the State, for it is evident from the terms of the Act that it was in the mind of the Legislature when it enacted this law that conditions required a vigorous prosecution of the State's claims against those who were infringing upon the rights in the public lands of the State. In view of this duty the language, "and for the purpose of paying any and all necessary expenses in bringing suits or paying expenses in prosecuting same," empowers the Attorney-General, with the concurrence of the Governor, to expend the sum appropriated or so much thereof as may be necessary to accomplish the purpose specified in the Act and the cost of whatever might be necessary in the discharge of the duties thus imposed upon him is included in the term, expense. The second section of the Act shows that in the mind of the Legislature there was an immediate necessity for the Attorney-General to make application of this fund to the protection of the public lands of the State. Suits were authorized to be brought by the language, to pay the expense of bringing suits and also in prosecuting the same. Out of this requirement there arose the necessity and the power of said officers to do the things that were required to be done in order to institute and to prosecute those suits and it requires no argument to show that the service of attorneys were necessary to the performance of this duty. It is true that the Attorney-General was charged with the performance of these duties by the Constitution and laws of the State, but the declaration of the emergency clause shows that the Legislature regarded it as impossible for him to perform this vast amount of professional work. The Governor and the Attorney-General were authorized to determine the necessity of employing special counsel to assist the Attorney-General and also to provide for the payment of his fees, therefore, the necessity for such counsel and the propriety of his employment are not before this court; those questions are concluded by the decision of those to whom the Legislature committed them. The method by which the payment should be made was a matter of discretion with the Governor and the Attorney-General. Would they pay fees for each case? or secure the services of an attorney by the month for a specified time? was submitted to them. That contract provided for services in twenty-one law suits then pending, besides other services which might be called for in suits to be instituted, and the term of employment being eight months, the sum to be paid is not apparently exorbitant; it may have been the most economical and satisfactory method of conducting the litigation, and that question was likewise committed to those officers and their decision of it must control.

The statute under review contains this language: ". . . to be expended under the direction of the Attorney-General by and with the approval of the Governor, and to be paid upon warrants drawn by the Comptroller of Public Accounts on vouchers approved by the Attorney-General." Applying the law to the facts of this case, the making of

the contract with Terrell required the approval of the Governor, which was given by writing and was an approval of the expenditure of the fund as provided in that agreement. The payment of the money was provided for distinctly by the language, "to be paid upon warrants drawn by the Comptroller of Public Accounts on vouchers approved by the Attorney-General." This language is plain and distinctly defines the duties of the Governor. Neither the voucher nor the warrant required the approval of the Governor. The warrant drawn in this case was regular and the treasurer had no discretion in the matter, he should have paid it.

The mandamus will be issued.