

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
~~XXIXXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Opinion No. O-5355
Re: Workmen's Compensation Insur-
ance for members of Texas State
Guard as provided by Senate Bill
135, 48th Legislature; sufficiency
of physical examinations; the cost
of same; identification of forms
and records used in administering
the Act; effect of Section 11 of
Article 8306, Vernon's Annotated
Civil Statutes; rights of super-
numeraries; authority of Texas
Highway Department to employ priv-
ate adjusters and to hire addition-
al help to administer the Act.

Dear Sir:

We have your recent letter asking eight questions con-
cerning Senate Bill 135 of the 48th Legislature, which provides
Workmen's Compensation Insurance for members of the Texas State
Guard. The portions of your letter dealing with the separate
questions will be quoted and answered separately.

Question (1) "Section 2, sub-section 2 reads in part
as follows:

"'Member' shall mean every person in the Texas Defense
Guard. Provided that no person shall be classified as a
'Member' under this act nor be eligible to any compensation
benefits under the terms and provisions of this Act until
he shall have submitted himself first to a physical exami-
nation by a regularly licensed physician or surgeon, desig-
nated or accepted by the Texas Defense Guard to make such
an examination, and until, as a result of such examination,
all physical defects existent at the time of the examina-
tion have been noted and recorded.'

"Section 11 is in part as follows:

"'It shall be the duty of the Adjutant General's De-
partment to preserve as part of its permanent records said
Doctor's Certificates and said Enlistment Forms to which
the State Highway Department will have access.'

"Is a special examination intended, or are we to ac-
cept the rather superficial examination given at the time

of enlistment?"

You will note that this Act operates prospectively
and not retrospectively.  Section 3 provides in part:

"After the effective date of this law any member, as
defined in this law, who sustains an injury in the course
of duty shall be paid compensation as hereinafter provided."

Insurance is not provided for injuries received prior to the ef-
fective date of the Act.  The purpose of the physical examina-
tion is to record the defects extant when the guardsman quali-
fies for insurance.  It is therefore, our opinion that a physical
examination made on enlistment prior to the effective date of
the Act is not sufficient to qualify a guardsman for insurance
under the Act.

Question (2) "If special examination is to be given,
who is to bear cost of same?"

Section 15 authorizes your department "to expend for
all costs, administrative expense (other than salaries), charges,
benefits, and awards, any funds appropriated for that purpose."
Section 18 appropriates $15,000.00 "to carry out the provisions
of this Act from its effective date until September 1, 1943."

But, you will note that a guardsman does not qualify
for insurance merely by being in the guard.  He must also submit
himself to the required physical examination if he wishes to ob-
tain the benefits of the Act.  The Act does not provide that it
is the duty of your department to see that each guardsman quali-
fies.

It is, therefore, our opinion that the cost of the
qualifying physical examination is not a proper administrative
cost or expense to be paid out of the $15,000.00 appropriation,
but should be borne by the guardsman who seeks to qualify.

Question (3)  "Since we will be administering the
benefits to our own employees, and those to the Guardsmen
through the same Division of the Highway Department there
will be much cause for confusion in keeping the records
separated unless special precautions are taken to clearly
set these two functions apart.  This confusion will be par-
ticularly prevalent among doctors in making their reports
and submitting bills for services.  There will also likely
be some difficulty on the part of the Industrial Accident
Board in separation unless special designation is given to
the new work.  In order to avoid this anticipated confu-
sion we would like to set up the administration of Senate
Bill 135 under the name of Texas State Guard Compensation
Administration.

"Is there any legal reason why this cannot be done?"

By the phrase "set up the administration" we understand you to mean the identification of forms and records.  We see no legal reason to prevent your department from marking or printing the above quoted name on all forms and records used in the administration of the Act.

Question (4)  "If permissible, are there any special requirements to be met in order to so operate?"

We find no extra or additional requirement that arises merely because your department uses for purposes of identification the name "Texas State Guard Compensation Administration."

Question (5)  "Section 11, Article 8306, Acts 1927, 40th Legislature, Page 41, Chapter 28, Section 1 was adopted by reference.  This section provides 'While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and his average weekly earning capacity during the existence of such partial capacity.'

"Since the compensation rate for guardsmen is fixed at $20 per week, without any relationship to nor being affected by the rate of earnings (See Section 2, sub-section 6) is Section 11, Article 8306 effective under Senate Bill 135?"

It is our opinion that Section 11 of Article 8306, Vernon's Annotated Civil Statutes, is not rendered ineffective by Section 2, subsection 6 of Senate Bill 135 and that the "definite and fixed sum of $20.00 per week" pertains to total incapacity.  It is also our opinion that "average weekly wages before the injury" as used in such Section 11, means in the language of Senate Bill 135 "such wages as would produce a maximum compensation rate of $20.00 per week."

Question (6)  "We have been advised by the Adjutant General's Department that numerical limits have been placed on the various units, for instance a rifle company may not have more than 75 enlisted members.  Some of these companies have 'waiting lists' or applicants that cannot be accepted because the company is already at full strength.  These 'supernumeraries', as they are called, are allowed to attend and take full part in the training program, just as the regular members do.  They may wear the uniform, but not the shoulder patches.  They use the guard's equipment, but none of it is actually issued to them, as it is to members.

They are not given a physical examination nor do they fill out enlistment papers.  A separate record is kept of these men and their attendance for training.  In reality they are reservists under full training.

"In our opinion are they entitled to benefi provided by Senate Bill 135?"

In our opinion the "supernumeraries" are not entitled to the benefits of the Act.

Question (7)  "Section 15 says, 'The Department is hereby authorized to expend for all costs, administrative expense (other than salaries), charges, benefits, and awards any funds appropriated for that purpose.'  It is the general practice among insurance companies to have regularly constituted claims adjustment service companies to do much of their work of investigation, adjustment, et cetera, of claims upon a fee basis.

"Do we have authority to use such services and pay fees for same under the limitations of Section 15?"

In 34 Texas Jurisprudence, page 459, it is said:

"It is a general rule that public duties must be performed and governmental powers exercised by the officer or body designated by law--that they cannot be delegated to others.  This is particularly true of duties which are judicial in their nature, or discretion, and which are regarded as a part of the public trust assumed. . . ."

Also in Naill v. State, 129 S.W. 630, the court quotes and approves this language:

"The general rule is that the performance of public duties cannot be delegated by a public officer, and unless there is a clear expression in the statute to the contrary it will be presumed that the Legislature intended that public duties which require the exercise of discretion should be performed by public officers."

Webster's Dictionary defines the word "adjust" when used in connection with insurance as meaning, "To determine the amount to be paid under a policy in settlement of a loss" and an "adjuster" as "one who adjusts."

In our opinion such functions require the exercise of discretion and your department has no authority to use and pay fees for such services of "claims adjustment service companies."

However, in the case of Terrell v. Sparks, State Treasurer, 135 S.W. 519, our Supreme Court considered an Act providing an appropriation to be expended under the direction of the Attorney General "for the purpose of enforcing any and all laws of the State of Texas, and for the purpose of paying any and all necessary expenses in bringing suits or paying expenses in prosecuting same." The court held that such Act authorized the Attorney General to contract with an attorney to perform certain services under the direction of the Attorney General. The Treasurer was ordered to honor the warrant issued to such attorney.

It is further our opinion that your department under the quoted provision of the Act may contract with such claims adjustment companies for the performance of ministerial services such as the investigation and reporting of facts in connection with claims, and the fee for such services may be paid out of the appropriation.

Question (8) "The Departmental Appropriation Bill provides, 'All revenues, fees, and grants in aid received for credit to the State Highway Fund during the biennium beginning September 1, 1943, together with the balance of such funds on hand at the beginning of each year of the biennium, are hereby appropriated for the payment of the specific appropriations herein made for the State Highway Department and the Department of Public Safety, and for the establishment of a system of State Highways and the planning, construction, and maintenance thereof as contemplated and set forth in Chapter 1, Title 116 and Chapter 186, General Laws of the Regular Session of the Thirty-ninth Legislature, and amendments thereto.'

"Do we have authority to hire additional help, if any be required, to administer the Act, and pay salaries of same from regular Highway Department funds?"

In our opinion you do not have authority to hire additional help to administer the Act and pay the salaries of such employees from regular Highway Department funds. The last paragraph of the Departmental Appropriation Bill that you mentioned reads in part as follows:

"There is hereby appropriated for each year of the Biennium beginning September 1, 1943 and ending August 31, 1945, the sum of Fifty Thousand ($50,000) Dollars for the uses and purposes of, and carrying out the provisions of Senate Bill No. 135, Acts of the Regular Session of the 48th Legislature no salaries shall be paid from this appropriation. . . ."

Trusting this opinion sufficiently answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Donald Gay
Donald Gay, Assistant

APPROVED JUL 1, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

DG:db:wb