

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**

**ATTORNEY GENERAL**

Honorable E. J. Kyle
Dean, School of Agriculture
A. & M. College
College Station, Texas

Dear Sir:
Opinion No. 0-5918
Re: Authority of Board of A. & M.
College to purchase Seth Moor-
ing and John Lawrence farm with
all equipment and teams out of
Pure Feed Funds

We acknowledge receipt of your letter of March 4, 1944, in which you quote a resolution of the Board of Directors of the Agricultural & Mechanical College of Texas, dated February 19, 1944, wherein the Board authorizes the purchase of the Seth Mooring and John Lawrence farm of approximately 275 acres with all improvements at a price of $75.00 per acre and the purchase of all the equipment and teams in connection with the farm at a price of $12,750.00, said purchase price to be paid in cash from the current appropriation of the unexpended balance in the Pure Feed Fund. Your inquiries may be summarized as follows:

1. Whether the Board of Directors of A. & M. College has statutory authority to purchase the farm.

2. Whether the Board of Directors of A. & M. College has statutory authority to purchase the equipment and teams to be used on the farm.

3. Whether the unexpended balance in the Pure Feed Fund as appropriated to A. & M. College by the 48th Legislature may be used for said purposes.

4. Whether the proposed sellers have a clear and merchantable title to the Seth Mooring and John Lawrence farm.

Hon. E. J. Kyle - Page 2

You have left with us along with your opinion request the abstracts to this farm, but it will take some time to examine the abstracts. We will, therefore, limit this opinion to the first three questions mentioned above and pass on your abstracts in a title opinion, which we will write at a later date.

As we understand it, this farm which you propose to purchase consists by actual survey of 2776.36 acres in one tract of land. It lies across the Brazos river at a distance of approximately 4½ miles from the A. & M. Campus and is contiguous to a tract of land which is at present under lease to and is being used by the Main State Experiment Station at the Agricultural & Mechanical College.

The power of the Board of Directors of A. & M. College to purchase land conveniently located with reference to the campus of the college is conferred by Section 1 of Article 2613a, Vernon's Annotated Civil Statutes, which reads as follows:

"The Board of Directors of the Agricultural and Mechanical College of Texas is hereby authorized to contract with persons, firms or corporations for the purchase of, or the acquisition of, or the erection of permanent improvements on or conveniently located in reference to the campus of said College, or to the campuses of any or all of its branch institutions, and to purchase, sell, or lease lands and other appurtenances for the construction of such permanent improvements provided that the State of Texas incurs no indebtedness under the contracts."

The limitation on the power of the Board under the terms of the above statute is that the purchase shall not involve the incurring of an indebtedness by the State of Texas. The reason for this limitation, of course, is that Section 49, Article 3 of the Constitution, provides that "no debt shall be created by or on behalf of the State except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; . . ."

It has been held, however, that obligations which are payable entirely out of existing appropriations or current

Hon. E. J. Kyle - Page 3

revenues are not debts within the meaning of the Constitution. McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722; Austin Bros. v. Patton (Com. App.) 288 S. W. 182; West Audit Co. v. Yoakum Co., 35 S.W. (2) 404; McKenzie Construction Co. v. San Antonio, 50 S. W. (2) 349, error refused; State v. Medbury, 7 Ohio State Rpp. 522.

As stated by the Supreme Court in Charles Scribner's Sons v. Marrs, supra, "Obligations that run concurrent with revenues are not debts within the contemplation of the Constitution."

The Board of Directors of A. & M. College has the power of eminent domain in acquiring land for college purposes. Article 2613a-5, Vernon's Annotated Civil Statutes, provides, in part, as follows:

"Section 1. The Board of Directors of the Agricultural and Mechanical College of Texas is hereby vested with the power of eminent domain to acquire for the use of said College such lands as may be necessary and proper for carrying out its purposes, in the manner prescribed in Title 52, Revised Civil Statutes of Texas of 1925, as amended.

"Sec. 2. The taking of such property is hereby declared to be for the use of the State. . . ."

We think that the power of the Board of Directors to make the purchases is beyond question, if the money for that purpose has been made available by the current appropriation bill for A. & M. College.

The Pure Feed Fund, which is the source of the moneys with which you intend to purchase this farm and equipment, is a special fund in which there are deposited the tag and certification fees collected by A. & M. College on all feeding stuff used or sold in this State. The fees are paid to the Director of the Texas Agricultural Experiment Station at A. & M. and by him deposited in the State Treasury.

Article 3875, V.A.C.S., provides as follows:

"So much of the inspection tax and penalties collected under this title shall be paid by the State Treasurer to the treasurer of the Texas Agricultural and Mechanical College as the director of the Texas

Hon. R. J. Kyle - Page 4

> Agricultural Experiment Station may show by his bills has been expended in performing the duties required by this title, but in no case to exceed the amount of the inspection tax and penalties received by the State Treasurer under this title."

You state in your letter that the Board of Directors has by its Resolution of February 19, 1944, authorized the payment of the purchase price of the farm, equipment and teams out of the unexpended balance in the Pure Feed Fund, and you advised us orally that there is at present sufficient moneys on hand in said fund to pay the entire purchase price of the farm and the equipment and teams.

The current appropriation bill for the Agricultural and Mechanical College of Texas for the two fiscal years ending August 31, 1944 and August 31, 1945, contain, among others, the following provisions:

> "The unexpended balance in said Fund (Pure Feed Fund) may be used for any of the purposes herein appropriated for The Agricultural and Mechanical College, or for the purposes of conducting experiments with feeds by the Texas Agricultural Experiment Station and for such purposes as the Board of Directors of The Agricultural and Mechanical College of Texas may deem advisable, provided that any salaries paid or supplemented therefrom shall not exceed those paid for the same or similar services in the Main College. . . ."

Section 1 of the Appropriation Bill provides, in part, that: "All balances in the institutional funds . . . are hereby appropriated for the support, maintenance, operation and improvements of said State institutions" and in Section 2 that "the several sums of money specified hereinafter . . . are hereby appropriated . . . to the several educational institutions and other educational agencies named in this Act for their support, maintenance, buildings, operation and improvements."

It becomes necessary, therefore, to examine the statutes relating to the Agricultural Experiment Station to ascertain the powers of the Board of Directors in reference thereto.

Articles 136 and 137, R. S. 1925, read in part as follows:

"There shall be established at such places in this State as the board hereinafter named may deem proper, experiment stations for the purpose of making experiments and conducting investigations in the planting and growing of agricultural and horticultural crops and soils, and the breeding, feeding and fattening of livestock for slaughter. . . .

"The experiment station located at the Agricultural and Mechanical College in Brazos County which is in part supported by the Federal Government shall remain at said point as a permanent institution. It shall be known as the Main State Experiment Station, and shall be under the supervision of the Board of Directors of such college. . . ."

We note from the Resolution of the Board of Directors copied in your letter that the first and principal purpose for which this farm is being purchased is "to afford additional space and a better type of soil for research and kindred work on feeds and grains for poultry and livestock and in all other phases of agriculture for the Agricultural Experiment Station and for research projects for graduate students in agriculture."

The Board of Directors clearly has authority under Articles 135 and 137, quoted above, to establish and supervise the Main State Experiment Station at A. & M. for the purposes enumerated in the Resolution.

The foregoing provisions of the Appropriation Bill do not undertake to limit the Board of Directors in the expenditure of the balance in the Pure Feed Fund. It is true that the moneys in said fund are public moneys which must be re-appropriated every two years by the Legislature in order that they may be "expended in performing the duties" required by the pure feed statutes. However, as a matter of legislative practice we know that the use of these funds has been left largely to the discretion of the Director of the Experiment Station and the Board of Directors of A. & M. College. Considering the source of the fund and the legislative history in regard thereto, it is clear to our minds that the appropriation bill authorizes the expenditure of the unexpended balance in the Pure Feed Fund for such purposes as the

Hon. E. J. Kyle - Page 6

Board of Directors"may deem advisable" for the "support, maintenance, buildings, operation and improvements" of the Main State Experiment Station and "for the purposes of conducting experiments with feeds."

In line with this construction, see Moon v. Alred, Co. Atty., 277 S. W. 787, 790, wherein it was held that the proceeds of bonds which were voted for the purpose of erecting and equipping a courthouse and jail could be used in purchasing a site or sites therefor in said county. The Court said:

"... The rule of construction, as often declared by our Supreme Court, is:

'Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. . . The grant of an express power carries with it, by necessary implication, every other power necessary and proper to the execution of the power expressly granted.' Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519."

The only limitations on the use of the Pure Feed Funds are those already imposed by preexisting law. We have seen that the Board of Directors is limited in the purchase of land by Article 2613a, R. C. S. to lands "conveniently located in reference to the campus of said college" and is prohibited from incurring any indebtedness against the State of Texas by such purchases.

Since the Seth Mooring and John Lawrence farm is conveniently located to the campus of A. & M. so that it can be used in connection with the Main Experiment Station and as a part of the physical plant of A. & M. College, and since it and its equipment and teams can be paid for out of the unexpended balance in the Pure Feed Fund without incurring any debt against the State of Texas, the Board of Directors, in our opinion, has the authority to make said purchases.

Trusting that the foregoing answers your inquiry, we are

1944

Yours very truly

ATTORNEY GENERAL OF TEXAS

GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE