

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 2, 1972

Hon. Bevington Reed, Commissioner
Coordinating Board
Texas College and University System
P. O. Box 12788, Capitol Station
Austin, Texas   78711

Opinion No. M- 1133

Re:  Authority of Coor-
     dinating Board to
     impose charges for
     late repayment of
     loans due under the
     college student loan
     program, pursuant to
     Sections 52.01, et
     seq., Texas Education
     Code, and related
     question.

Dear Dr. Reed:

        Your recent letter requesting the opinion of this
office concerning the referenced matter states, in part, as
follows:

        "The Coordinating Board is considering
        authorization of a fee to be charged to a Hinson-
        Hazlewood College Student Loan borrower when a
        repayment on a loan is received later than ten
        days following the date the payment is due, and
        we respectfully request your opinion concerning
        the legality of such a procedure.  Specifically,
        does the Coordinating Board have statutory
        authority to assess and collect such charges
        on Hinson-Hazlewood College Student Loan accounts?

        "If it is determined that the Coordinating
        Board does have authority to assess and collect
        such a charge, does such authority extend to both
        the federally insured interim notes (negotiated
        since August 15, 1971, subsequent to passage of

-5513-

Senate Bill No. 527 and subsequent to the date
of our entry into the contract for federal
insurance) as well as to those interim notes
negotiated prior to entry into the federal
program? . . . ."

The Texas Opportunity Plan Fund, to provide loans
to college students, was established by the provisions of
Section 50b of Article III of the Constitution of Texas.
Pursuant to said constitutional authorization, Article 2654g,
Vernon's Civil Statutes was enacted, and established detailed
procedures for the operation and funding of the Texas Oppor-
tunity Plan. Article 2654g was repealed in its entirety, and
recodified as Sections 52.01, et seq., Texas Education Code,
by the 62nd Legislature in 1971.

While there is no express provision in these statutes
for authority to contract with the student for late charges
or fees as such, there is no provision therein which could be
construed as depriving the Coordinating Board of so contract-
ing with the student. Furthermore, as hereinafter shown,
Section 52.36 of the Code does permit such interest to be
charged as is reasonable and necessary to finance the program
and expenses incidental thereto.

On April 21, 1972, the Coordinating Board made its
own interpretation of the statutes and voted to provide for
an additional interest charge of five percent of the monthly
payment or $5.00, whichever is less, for student borrowers
whose payments become more than ten days overdue. This problem
has given the Board substantial concern, and the action was
taken because of its expressed need "to improve on the default
rate for the loan program."

The construction of statutes by the administrative
agency charged with their enforcement and administration is
entitled to great weight in the courts, and while not control-
ling, such construction in cases of doubt will generally be
followed unless clearly wrong. Armco Steel Corp. v. Texas

Employment Commission, 386 S.W.2d 894 (Tex.Civ.App. 1965, error ref., n.r.e.); Attorney General Opinion No. M-1082 (1972); 53 Tex.Jur. 2d 276-277, Statutes, Sec. 183; pp.265-266, Sec. 178.

The statutes here involved, being a part of the Texas Education Code, must be interpreted in accordance with the rules to aid in the construction of codes set out in Article 5429b-2, Vernon's Civil Statutes, the Code Construction Act. The construction aids are declared to apply, whether or not the statutes are considered ambiguous. Section 3.03 requires among other matters, consideration of the object sought to be attained, the consequences of a particular construction, and the administrative construction of the statute. Section 3.01 authorizes a presumption to be indulged, among other things, that a just and reasonable result was intended and that the public interest is favored over any private interest. Section 3.02 requires that the statutes be presumed to be prospective in their operation unless expressly made retrospective.

Furthermore, these revised statutes, under Article 10(8), Vernon's Civil Statutes ". . . shall be liberally construed with a view to effect their objects and to promote justice." Section 52.32 gives the power to authorize student loans from the Texas Opportunity Plan Fund, and Section 52.34 of the Education Code provides that,

"No payment may be made to any student until he has executed a note payable to the Texas Opportunity Plan Fund for the full amount of the authorized loan plus interest. For the purposes of this Chapter, a student has the capacity to contract and is bound by any contract executed by him, and the defense that he was a minor at the time he executed the note is not available to him in any action arising on the note."

Section 52.35 of the Code leaves the term of loans made to the discretion and determination by the Board, consistent with the guidelines that they must be made in duration for the shortest possible period and no longer than ten years from the student's enrollment, "except as a longer period is authorized for medical students, dental students, and students seeking professional or graduate degrees as authorized under the provisions of Section 52.38 of this Code."

Section 52.36 of the Code provides that the Board shall annually "fix the interest to be charged for any student loan at a rate sufficient to pay the interest on outstanding bonds plus any expenses incident to their issuance, sale, and retirement."

Section 52.38 of the Code provides for monthly repayment of loans. The time duration and extension of time for repayments is left to the Board's discretion, based on consideration of "financial hardships, with the approval of the Attorney General." Repayments are directed therein to be made directly to the Board or to a participating institution "pursuant to a contract executed by the board in accordance with its rules and regulations."

Suit upon automatic default is provided after the student borrower fails and refuses to make six monthly payments due "in accordance with an executed note" in Section 52.39 of the Code.

Under Section 52.54(a) and (b) of the Code, the Board is required to adopt and publish rules and regulations to effectuate the purposes of the program and may also adopt rules and regulations for participation in the federal guaranteed loan program provided by the Higher Education Act of 1965 (20 U.S.C.A. Sec. 421, et seq.).

The specific power of the Board to contract with any governmental agency, business entity or individual in achieving the purposes of the program and the performance of its functions is set out in Section 52.52.

From the foregoing, it appears that the Legislature has in general terms provided for the Board to administer and finance that student loan program, leaving discretion to the Board to carry out the incidental details by the promulgation of rules and regulations and through the power to contract with the student for the loan amount, terms, time and provisions for repayment of the loan, including the fixing of the amount of interest to cover the expenses incident to the financing of the bond obligations. While not specifically mentioned, we think the matter of providing, as a part of the voluntary loan contract, for an additional interest charge to cover the expenses incident to collection of delinquent payments which are a part of the total cost of the bond financing program, is necessarily implied in the general grant of authority to the Board to carry out its administration and enforcement of the loan program. Such a charge is usual and customary and to be reasonably expected by the parties in the conduct of all other commercial and business transactions.

We think the pertinent rule of statutory construction here applicable is that the statutory grant of such express powers carries with it, by implication, every incidental power that is necessary and proper to the execution of the powers expressly granted. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519 (1911); 53 Tex.Jur.2d 203, Statutes, Sec. 141.

A statutory construction that the Legislature intended to leave the Board powerless to do anything about late payments and to permit delinquent borrowers to have the free use of the money borrowed for periods of time at the expense of the public is not a just and reasonable result and favors the private over the public interest. We reject such a construction in favor of that adopted by the administrative agency, to which the Legislature has given the responsibility of supervising and operating the student loan program.

We also note that the portion of the Higher Education Act of 1965 dealing with loans to students in institutions of higher learning is the National Defense Education Act, found

at 20 U.S.C. 421, et seq., Subsection (c) of 20 U.S.C. 425 provides, in part, that

> "Pursuant to regulations of the (U.S.) Commissioner (of Education), an institution may assess a charge with respect to a loan from the loan fund established by the institution pursuant to this subchapter <u>for failure of the borrower to pay all or any part of an installment</u> when it is due. . . ." (Emphasis added.)

Since the Board has entered into a contract to participate in the federal guaranteed loan program provided by the Higher Education Act of 1965, it may adopt rules and regulations providing for additional charges where the borrower fails to pay all or any part of an installment when it is due.

With respect to those loans not connected with the federal guaranteed loan program, we would here point out that the provision for assessing an additional interest charge as an expense incident to the bond financing program is subject to Board action annually, not later than September 1, under Section 52.36 of the Code. This statute is constructive notice to the contracting parties and may be read into the note or contract as a part thereof. <u>Anderson - Berney Realty Co. v. Sovia</u>, 41 S.W.2d 279 (1931), affd. 123 Tex. 100, 67 S.W.2d 222; 12 Am.Jur.2d 769, Contracts, Sec. 240; Attorney General Opinion No. M-1034 (1971). The charge made should be based upon this consideration and bear a proportional relationship to the amount of the particular loan as made.

Your second question concerns whether or not the Board has the authority to provide for late payment charges as to both the federally insured interim notes (negotiated since August 15, 1972, subsequent to passage of Senate Bill No. 527 and subsequent to the date of your entry into the contract for federal insurance) as well as to those interim notes negotiated prior to entry into the federal program.

You have advised that the proposed late charge is consistent with the requirements of the federally insured student loan program in which the Hinson-Hazlewood College Student Loan Program is now a participant, and that you have adopted such amendment, which will be implemented in a manner consistent with the Federal Reserves Regulation Z, Truth and Lending in Consumer Credit Cost Disclosure. In view of Section 52.54 of the Texas Education Code and the federal statutes and regulations above cited, which constitute constructive notice to all parties at all relevant times and may be read into any notes or contracts executed in connection with the federal program, and particularly in view of your administrative construction and adoption of the proposal, we also answer your second question in the affirmative.

### S U M M A R Y

The Coordinating Board has the authority to promulgate rules and regulations for interest charges on delinquent repayments of student loan accounts pursuant to Sections 52.01, *et seq.*, Texas Education Code, and may so provide for the same in the contracts and notes to be executed by the student borrower. Such authority extends to both the federally insured interim notes as well as to those interim notes negotiated prior to entry into the federal program.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by William J. Craig
Assistant Attorney General

Hon. Bevington Reed, page 8, (M-1133)


APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Bill Campbell
J. C. Davis
Jack Goodman
Bob Lattimore
Houghton Brownlee

SAMUEL D. MCDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant