

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

February 6, 1975

The Honorable M. L. Brockette
Commissioner of Education
Texas Education Agency
210 East Eleventh Street
Austin, Texas 78701

Opinion No. H- 518

Re: Interpretations of Section
16.16 of the Education Code
with reference to comprehensive
special education.

Dear Dr. Brockette:

You have requested an opinion from this office concerning the provisions of section 16.16 of the Texas Education Code, which authorizes a comprehensive special education program for exceptional children in Texas. Specifically, your request raises three issues:

(1) Between what ages are children who are "mentally retarded" or both "mentally retarded" and "physically handicapped" eligible to participate in special education programs under section 16.16?

(2) Is the legislative intent of section 16.16 to impose a mandatory duty upon each Texas school district to furnish directly or indirectly special education programs to "exceptional children" residing in the district who are either "mentally retarded" or both "physically handicapped" and "mentally retarded"?

(3) If so, does section 16.16 authorize the State Board of Education, acting through the Commissioner of Education and his staff, to permit all Texas school districts to operate or provide "Plan B" programs and services until the beginning of the 1976-77 school year, and to require all districts to operate or provide "Plan A" programs and services thereafter?

p. 2334

## 1. AGE LIMITATIONS FOR "MENTALLY RETARDED" AND "PHYSICALLY HANDICAPPED/MENTALLY RETARDED" CHILDREN.

Subsection (b)(1) of section 16.16 defines "exceptional children" as:

> . . . children between the ages of 3 and 21, inclusive, with educational handicaps (physical, retarded, emotionally disturbed, and/or children with language and/or learning disabilities) as hereinafter more specifically defined; autistic children; and children leaving and not attending public schools for a time because of pregnancy -- which disabilities render regular services and classes of the public schools inconsistent with their educational needs.

"Physically handicapped children" and "mentally retarded children" are more specifically defined in subdivision (b)(2) and (b)(3) of section 16.16. Since "physically handicapped" children and "mentally retarded and/or physically handicapped" children are within the definition of "exceptional children," such children not younger than 3 nor older than 21 are entitled to whatever special programs may be authorized or required under section 16.16.

## 2. DUTY OF SCHOOL DISTRICTS TO IMPLEMENT SPECIAL EDUCATION PROGRAMS.

Your second question is whether section 16.16 is mandatory or permissive, i.e., whether it requires each district to provide the described special education program to its resident "exceptional children" or merely makes state aid available to those districts which elect to operate such programs. The statute itself does not expressly respond to this question. In our opinion, however, the statute should be construed as mandatory.

Section 16.01 of the Education Code outlines the purpose of the Foundation School Program of which the section 16.16 special education program is a part.

> The purpose of the Foundation School Program
> is to guarantee to each child of school age in Texas
> the availability of a Minimum Foundation School
> Program for nine full months of the year and to
> establish the eligibility requirements for the public
> school districts of Texas in connection therewith.

The language of the statute is clear; its purpose is to guarantee each school age child in Texas the availability of a Minimum Foundation School Program. Therefore, under the statute "exceptional" children should be guaranteed the same opportunity for education as any other school age child in Texas. To allow local school districts receiving Foundation School funding to operate education programs only at their option would not be making available Minimum Foundation School Programs to the child.

Section 16.16 of the Education Code also contains an indication of legislative intent. Subdivision (a) of that section provides:

> It is the intention of this section to provide
> for a comprehensive special education program
> for exceptional children in Texas.

Webster's Third New International Dictionary (unabridged Ed. 1966), defines the adjective "comprehensive" as:

> . . . covering a matter under consideration
> completely or nearly completely: accounting for
> or comprehending all or virtually all pertinent
> considerations . . . .

In our opinion, the intent of section 16.16 is to provide a "comprehensive" special education program - comprehensive in that it is available to all eligible children. Legislators involved in the drafting and passage of section 16.16 have confirmed that it was intended that the statute provide special education programs to every eligible child in Texas. The statute itself is designed to facilitate implementation of a mandatory comprehensive program with a maximum of flexibility allowed to provide for the needs of smaller school districts. Section 16.16(g) contemplates cooperative operation of a program by two or more school districts when they are unable to efficiently operate programs individually:

> (g)  Special education unit personnel may be
> employed and/or utilized on a full-time, part-
> time, or upon a consultative basis, or may be
> allotted by the commissioner of education,  pur-
> suant to cooperative districts' agreement, jointly
> to serve two or more school districts.  Two or
> more school districts may operate jointly their
> special education program and any school district
> may contract where feasible with any other school
> district for all or any part of the program of
> special education for the children of either district,
> under rules and regulations established by the com-
> missioner of education.

Section 16. 16(m) allows school districts to contract with public or private agencies approved by the State Board of Education to provide the neces- sary special education services:

> (m)  Under rules and regulations of the State
> Board of Education, eligible school districts may
> contract with nonprofit community mental health
> and/or mental retardation centers, public or
> private, or any other nonprofit organization,
> institution, or agency approved by the State
> Board of Education, for the provision of services
> to exceptional children as defined by this section,
> who reside with their parents or guardians.

The conclusion that section 16. 16 is mandatory is reinforced by the legislative history of state-supported special education programs in Texas. Prior to 1969, state-supported special education classes in local districts were mandatory only upon a petition to the local board of trustees by the requisite number of parents of exceptional children.  V. T. C. S. art. 2922-13. In 1969, article 2922-13 was amended in substantially its present form,

eliminating the local option feature.  Acts 1969, 61st Leg. , ch. 863, pp. 2602-06.  In 1971, the amended article 2922-13 was included in the recodification of the Education Code, as section 16.16.  Acts 1971, 62nd Leg., ch. 405, pp. 1491-94.  Thus, the 1971 version of section 16.16 under consideration here, while it did not substitute provisions clearly imposing a mandatory duty on districts to provide special education programs, did eliminate earlier language allowing districts to decline implementation of the program in the absence of parental petitions.

Finally, there is authority for the view that a district operating under and receiving state funds from the Foundation School Program must offer the benefits of the program to any child who meets its age and residence requirements.  Attorney General Opinion M-552 (1970) has so held in respect to the kindergarten program established under article 2922-11a, V. T. C. S., (now section 16.04), citing Anderson v. Canyon Independent School District, 412 S. W. 2d 287 (Tex. Civ. App. --Amarillo 1967, no writ) and Alvin Independent School District v.  Cooper, 404 S. W. 2d 76 (Tex. Civ. App. --Houston 1966, no writ).  These cases hold invalid local school rules barring married students from attendance. Section 16.16, which is an integral part of the Minimum Foundation Program, [see, subdivisions (l) and (o)], similarly prescribes a program of specialized educational assistance for a designated class of persons. In our opinion a school district should likewise be precluded from electing not to provide its benefits to members of the eligible class residing in the district.

We are aware that the case of Love v.  City of Dallas, 40 S. W. 2d 20 (Tex. Sup. 1931) could be construed to support a contrary conclusion. However, it is our view that such a construction is unlikely, and even if that construction were adopted, the case would be distinguished from this situation on several different grounds.

### 3. VALIDITY OF TEA REGULATIONS

Your third question asks if section 16.16 imposes a mandatory duty upon all school districts to provide a comprehensive program of special

education, do    the State Board of Education and the Commissioner of Education have the regulatory authority to defer the mandatory requirement for comprehensive programs until the beginning of the 1976-77 school year?

The policies of the State Board of Education, administrative procedures of the Commissioner of Education, and operational guidelines of the TEA Division of Special Education are set out in TEA Bulletin 711, Administrative Guide and Handbook for Special Education (March 1973). The policies and regulations in question concern the implementation of a comprehensive special education program.

### 3.1 Comprehensive Special Education For Exceptional Children (Plan A)

All accredited local school districts operating approved special education programs for exceptional children under the Foundation School Program shall provide comprehensive special education programs and services for handicapped pupils between the ages of 3 and 21 years, inclusive, by the school year starting September 1, 1976. [TEA Bulletin  711 at 39].

### 3.2 Program Based on Identified Handicapped Pupils (Plan B)

Until such time as such local school districts can develop a comprehensive special education program and be approved for such a program or until September 1, 1976, any accredited school district may make application for allocation for special education programs based on identified handicapped pupils between the ages of 3 and 21, inclusive, by disability categories (Plan B). [TEA Bulletin  711 at 44].

2.17 Implementation of Comprehensive Programs
for Exceptional Children

'Comprehensive Programs for Exceptional Children'
(Plan A) shall be available on a state wide basis by
September 1, 1976. A selected number of school
districts each year will be approved to develop 'Com-
prehensive Programs for Exceptional Children' (Plan A).
Other school districts shall be approved to operate
special education programs based on 'Allocations Based
on Identified Handicapped Pupils' (Plan B) until September
1, 1976. [TEA Bulletin 711 at 38].

Apart from programatic differences, there appear to be two basic
procedural differences between "Plan A" and "Plan B." First, Plan A
is mandatory for all districts after September 1, 1976, while Plan B is
available for those districts desiring to implement it until September 1,
1976. Second, the formula for allocating instructional units under Plan
A is based on a district's total average daily attendance (ADA) for
pupils from 6 through 21 years of age for the preceding school year, while
the Plan B formula is based on the actual number of handicapped pupils
identified by type of disability for whom the school district plans to
provide special education services. See TEA Bulletin 711 at 39, 44.

Under section 16.16, the State Board of Education is empowered
to adopt rules, regulations and formulae for the allotment of "exceptional
children teacher units, in addition to other professional and paraprofessional
unit allotments" [subdivision (c)] , for the establishment of quantitative
bases for the allotment of "all special education unit personnel" [sub-
division (f)] , and for the contracts under which "eligible school districts"
may arrange for special services from public or private non-profit
organizations, institutions, or agencies [subdivision (m)] . The Commis-
sioner of Education may make rules establishing the qualifications and
minimum salary levels of paraprofessional personnel [subdivision (e) ],
prescribe the terms and conditions under which two or more school
districts may operate joint programs [subdivision (g) ], determine
amounts of "special service allowances" [subdivision (h) ] and approve

9, 10, 11, or 12 month special education programs and prescribe qualifications for special education teachers, counselors and supervisors [subdivisions (j) and (k)].

It is a well settled rule of statutory construction, stated in Terrell v. Sparks, 135 S.W. 519, 521 (Tex.Sup. 1911), that:

> Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted. Where the law commands anything to be done, it authorizes the performance of whatever may be necessary for executing its commands. (Citing Sutherland on Statutory Construction, § 341).

See also Attorney General Opinion C-265 (1964).

In our opinion, the authority granted the State Board of Education and the Commissioner of Education by section 16.16 to adopt rules and regulations outlined above includes the power to prescribe a reasonable period of time for districts to achieve compliance with the mandate of section 16.16 to provide comprehensive special education programs. That the Legislature intended the program to be phased in over a period of time is evidenced by the method by which the program was to be initially funded. Balances remaining in the Foundation School Fund were to be appropriated at the end of each fiscal year of the initial biennium to pay for the special education program. Acts 1969, 61st Leg., ch. 863, p. 2602 at 2605. However, since the sums available were of an uncertain amount, it is clear that the Legislature did not intend that all programs be fully operated and funded at the same date.

Given the apparent complexity of establishing a state-wide program of special education, including the training of qualified teachers and other personnel to administer the program, it is our opinion that September 1, 1976,

is a reasonable deadline.  The power to prescribe a reasonable dead-line for compliance also necessarily includes the power to prescribe reasonable alternative plans,  such as "Plan B,"  to ease the transition from no special education programs to the "Plan A" comprehensive programs required under the statute.

## SUMMARY

1.  In the case of either "mentally retarded" or both "physically handicapped" and "mentally retarded" persons, eligibility for special education programs under section 16.16 is governed by the age limitations for "exceptional children" in subdivision (b)(1).

2.  Section 16.16 entitles "exceptional children" residing in a district operating under the Foundation School Program to receive, and imposes on the district a corresponding mandatory duty to furnish special education programs as outlined in the statute.

3.  It is within the authority conferred by section 16.16 for the State Board of Education to establish September 1, 1976, as the date by which all districts must implement a comprehensive program of special education for resident exceptional children, and to permit school districts to operate alternative "Plan B" programs until such date.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee