

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. O-6581
Re: Legality of appropriations
for salaries for the district
officials in various districts.

We acknowledge receipt of your request for an opinion on the above matters, your request being as follows:

"We are now making an audit of the books of account and records as maintained by the State Comptroller of Public Accounts pertaining to the Judiciary Section, Comptroller's Department, for the three-year period ended August 31st, 1944.

"The Forty-seventh Legislature appropriated the following salaries for district attorneys, assistant district attorneys and investigators and a criminal district attorney for the biennium ended August 31st, 1943.

| "Item No. | Salaries For | Year Ended August 31st 1942 | 1943 |
|---|---|---|---|
| 3 | Criminal District Attorney | $4,500. | $4,500. |
| 4 | District Attorney - 34th District | 5,500. | 5,500. |
| 5 | Assistant District Attorney - 34th District | 2,700. | 2,700. |
| 6 | Assistant District Attorney - 53rd District | 3,000. | 3,000. |
| 7 | Assistant District Attorney - 53rd District | 2,700. | 2,700. |

Hon. C. H. Cavness, Page 2

| Item No. | Salaries For | Year Ended August 31st 1942 | 1943 |
|---|---|---|---|
| 8 | Assistant District Attorney - 9th District | 2,750. | 2,750. |
| 9 | Assistant District Attorney or one investigator - 49th District | 1,800. | 1,800. |
| 10 | Assistant District Attorney or Special Investigator: 30th District | 1,800. | 1,800. |
| | 72nd District | 1,800. | 1,800. |
| 11 | Assistant District Attorney - 47th District | 2,510. | 2,510. |
| 12 | Assistant District Attorney - 22nd District | 3,600. | 3,600. |

"The Forty-eighth Legislature eliminated all of the above appropriations except items 3 and 4, for the ensuing biennium ending August 31st, 1945.

"We shall appreciate your assistance on the following request and questions:

"1. Please furnish us with the Statute references for each of the above listed 47th Legislature appropriations, whereby such individual appropriations and the consequent expenditures were authorized - and advise if in your opinion any of the said appropriations were illegal by reason of the unconstitutionality of any of said Statutes, or because of the fact that any of those Statutes may not now be effective for the District or Districts for which they were originally enacted.

"2. If you rule that any of these itemized appropriations were illegal, could the individuals receiving such salaries retain same or should they reimburse the State of Texas?

"3. If you rule any of these appropriations to be illegal and that such salaries should be paid back to the State, which State Agency would be charged with the duty of recovering such salaries illegally

Hon. C. H. Cavness, Page 3

paid, and in each individual instance what years would be involved in addition to those covered by the Appropriation Act of the 47th Legislature?"

We will refer to the various matters contained in your request as Item 3, Item 4, etc., using the number for each Item that you have used.

Article V, Section 21, of the Constitution of Texas, is as follows:

"A county attorney, for counties in which there is not a resident criminal district attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of two years. In case of vacancy the Commissioners' Court of the county shall have power to appoint a county attorney until the next general election. The county attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of district attorneys in such districts, as may be deemed necessary, and make provision for the compensation of district attorneys, and county attorneys; provided, district attorneys shall receive an annual salary of five hundred dollars, to be paid by the State, and such fees, commissions and perquisites as may be provided by law. County attorneys shall receive as compensation only such fees, commissions and perquisites as may be prescribed by law."

Article 322, Vernon's Annotated Civil Statutes, is in part as follows:

"The following Judicial Districts in this State shall each respectively elect a District Attorney, viz: ... ninth, ... twenty-second, ... thirtieth, ... thirty-fourth, ...forty-seventh, ...forty-ninth, ... fifty-third, ... seventy-second, . . ."

Hon. C. H. Cavness, Page 4

Item 3, which we are informed by you was paid to the district attorney for the criminal district court for the Counties of Nueces, Kleberg, Kenedy, Willacy and Cameron, is authorized by Article 199, Sub-division 28, V. A. C. S., as amended by Acts 1925, 39th Leg., ch. 79, p. 243, creating a criminal district court in and for the counties above named, Section 4 thereof being in part as follows:

"....; and the district attorney of the said criminal district court elected and now acting for said district, shall be district attorney for said criminal district court in the counties of Nueces, Kleberg, Kenedy, Willacy and Cameron, and shall hold his office until the time for which he has been elected district attorney for the said criminal district court of Texas shall expire, and until his successor is duly elected and qualified; and there shall be elected for two years, beginning with the next general election after this Act takes effect, a district attorney for said criminal district court, whose power and duties shall be the same as other district attorneys; and said clerk, sheriff and district attorney shall, respectively, receive such fees and salaries as are now or may hereafter be prescribed by law for such officers in the district courts of the State of Texas, to be paid in the same manner."

Item 4 is authorized by Article 326a of said statutes, which is as follows:

"The District Attorney in and for the 34th Judicial District of Texas, composed of El Paso, Hudspeth and Culberson Counties, from and after January 1st, 1927, shall receive from the state as pay for his services the sum of $500.00 per annum, as provided for in the Constitution, and in addition thereto shall receive the sum of $5,500.00, said salary to be paid in monthly installments in the same manner as now provided for the payment of the $500.00 as fixed by the Constitution. All commissions and fees allowed District Attorneys by law, except in escheat cases shall, when collected, be paid to the District Clerk of El Paso County, who shall pay the same over to the State Treasurer."

Hon. C. H. Caviess, Page 5

Item 5 is authorized by Article 326b of said statutes, which is as follows:

"Said District Attorney in connection with, and for the purpose of conducting his office in said 34th Judicial District shall be, and is hereby, authorized to appoint two Assistant District Attorneys, one of whom shall receive from and after January 1st, 1927, as salary $3,600.00 per annum, and one of whom shall receive from and after January 1st, 1927, as salary $3,200.00 per annum, both such salaries payable by the State monthly."

Item 6 is authorized by Article 326n of said statutes, Sections 1 and 2 of which are as follows:

"Sec. 1. That District Attorneys in all Judicial Districts composed of only one county, in which county there are two or more District Courts with concurrent criminal jurisdiction, and which District Courts have exclusive jurisdiction of all prosecutions for failing or refusing to pay over money belonging to the State under Chapter Two (2) of Title Four (4) of the Penal Code of 1925, and which District Courts further have concurrent jurisdiction with all District Courts in Texas in prosecutions involving the forging and uttering, using or passing of forged instruments in writing which concern or affect the title to land in this State, under Chapter Two (2) of Title Four (4) of the Code of Criminal Procedure of 1925, shall hereafter receive from the State as pay for their services the sum of Five Hundred Dollars ($500.00) per annum, as provided by the Constitution, and in addition thereto shall receive the sum of Three Thousand Five Hundred Dollars ($3,500.00) per annum, said salary to be paid in monthly installments in the same manner as now provided for the payment of the Five Hundred Dollars ($500.00) fixed by the Constitution. All commissions and fees allowed District Attorneys by law, shall, when collected, be paid to the District Clerk of such counties, who shall pay the same over to the State Treasurer.

Hon. C. H. Cavness, Page 6

"Sec. 2. That in such Judicial Districts the District Attorney, with the consent of either of the District Judges, is hereby authorized to appoint one assistant District Attorney, who shall receive as salary Three Thousand Dollars ($3,000.00) per annum payable by the state monthly."

Article 199, Sub-division 53, of said statutes, provides for the 53rd, 98th and 126th Judicial Districts of Texas, each to be composed of Travis County, and that said three District Courts of Travis County shall have jurisdiction over all matters, both civil and criminal, of which jurisdiction is given or shall be given by the Constitution and Laws of Texas to District Courts; and said three District Courts shall have concurrent civil and criminal jurisdiction of all matters, civil and criminal, of which jurisdiction is given to the District Court by the Constitution and the Laws of the State of Texas.

Article 99 of the Penal Code of Texas, which is a part of Chapter Two (2) of Title Four (4) of said Code and which deals with Misapplication of Public Money, is as follows:

"All prosecutions for failing or refusing to pay over money belonging to the State under this chapter shall be conducted in Travis County."

Item 7 is authorized by Article 326k-7, which is in part as follows:

"Sec. 1. That the District Attorney of the 53rd Judicial District of Texas is authorized to appoint as Assistant District Attorney in addition to that authorized by Section 2 of Article 326n, as carried forward in Vernon's Civil Statute of the State of Texas, under Acts of 1931, Forty-second Legislature, page 744, Chapter 291.

"Sec. 2. The Assistant District Attorney provided for in Section 1 shall be a duly licensed attorney at law and a bona fide resident of Travis County and shall possess all the qualifications that are now required by law of the District Attorney of the 53rd Judicial District of the State of Texas; shall take the oath of office; shall be subject to removal by the will of the District Attorney; shall

Hon. C. H. Cavness, Page 7

be authorized to perform any official act devolving upon or authorized to be performed by the District Attorney, and under such directions of the District Attorney, shall represent the District Attorney in matters pending before the 53rd, 98th and 126th District Courts of Travis County; that said Assistant District Attorney shall receive a salary of Three Thousand ($3,000.00) Dollars per annum, payable by the State monthly. After the end of the biennium closing August 31, 1937, such Assistant District Attorney shall receive such salary as may be provided for by the appropriation bill. . . ."

Item 8 is authorized by Article 199, Sub-division 9, of said statutes, creating the Special Ninth District Court of Montgomery, Polk and San Jacinto Counties, (Acts 1939, 46th Leg., p. 157), Section 8a of which reads as follows:

"The District Attorney for the Ninth Judicial District of the State of Texas is hereby empowered and will have the authority to appoint one Assistant District Attorney to prosecute criminal cases in the Special Ninth District Court of the State of Texas, and the District Attorney is hereby empowered and will have the authority to dismiss the said Assistant District Attorney for a good and sufficient cause, and said Assistant District Attorney during the time of his service shall be paid a salary of Two Thousand, Seven Hundred and Fifty Dollars ($2,750.00) per year and be payable out of the General Revenue of the State of Texas by warrants issued upon same."

The above Act provided that said Special Ninth District Court should cease to exist the 30th day of June, 1943, (Sec. 11), but, by a later Act, (Acts 1939, 46th Leg., p. 162, Sec. 9) said District Court was extended to the 30th day of June, 1945. Trinity County was added to said District by said later Act, but no change was made as to the provisions for an Assistant District Attorney above set out.

Item 9 is authorized by Article 324 of said statutes, as amended by Acts 1941, 47th Leg., p. 334, Ch. 215, Sec. 1, which reads as follows:

Hon. C. H. Cavness, Page 8

"In any judicial district in this State consisting of more than one county in which there is situated a city of not less than thirty-four thousand (34,000) inhabitants and not more than forty-four thousand (44,000) inhabitants, according to the last preceding Federal Census, the district attorney shall appoint one assistant district attorney, provided the district attorney shall furnish data to the district judge of his district that he is in need of an assistant and is himself unable to attend to all the duties required of him by law, and that it is necessary to the best interest of the State that an assistant district attorney be appointed. Said assistant district attorney so appointed shall be a qualified resident of the district in which said appointment is made and shall give bond and take the official oath. The said assistant district attorney shall be a qualified licensed attorney and shall have authority to perform all the acts and duties of the district attorney under the laws of this State; said appointment shall be for such time as the district attorney shall deem best in the enforcement of the law, not to be less than one month. Said assistant district attorney shall be paid by the Comptroller for the time of actual service rendered at the rate of Twenty-five Hundred Dollars ($2500) per annum. Said sum shall be paid upon certificates of the district attorney of said district that said assistant district attorney has performed his duties and is entitled to pay. The district attorney of any such district at any time he deems said assistant unnecessary, or finds that he is not attending to his duties as required by law, may remove said person from office by merely writing to said district judge to that effect."

The 49th Judicial District of Texas is composed of the Counties of Dimmit, Zapata, Jim Hogg and Webb. In said district there was located the City of Laredo, whose population, as shown by the Federal Census of 1940, was 39,274. Therefore, said Judicial District came within the provisions of Article 324 of said statutes.

We have been unable to find any statute specifically authorizing the Assistant District Attorney or Special Investigator for the 30th district referred to in Item 10, or prescribing the qualifications, duties and compensation of the person appointed to

Honorable C. H. Cavness, Page 9

such position; but, for the reasons hereinafter set forth, it is our opinion that the appropriation of a salary for such person is sufficient authority for his appointment and being paid the salary so provided.

That part of Item 10 pertaining to the 72nd District is authorized by Art. 326-1, Sections 1 and 3 of which read as follows:

"Sec. 1. The District Attorney of the 72nd Judicial District of Texas, is hereby authorized to appoint one Assistant District Attorney.

". . . .

"Sec. 3. The Assistant District Attorney provided for in Section 1 of this Act shall receive an annual salary of $2,500.00, payable monthly, out of any money not otherwise appropriated, upon the sworn account of such Assistant District Attorney, approved by the District Attorney."

We have been unable to find any statute specifically authorizing the Assistant District Attorney for the 47th district referred to in Item 11, or prescribing the qualifications, duties and compensation of the person appointed to such position, but, for the reasons hereinafter set forth, it is our opinion that the appropriation of a salary for such person is sufficient authority for his appointment and being paid the salary so provided.

Item 12 is authorized by Article 326k-3 of said statutes, which is, in part, as follows:

"Sec. 1. District attorneys in each judicial district in this State containing five or more counties having a combined population, according to the Fourteenth Census of the United States of the year 1920, of not less than 98,740 nor in excess of 98,750, shall receive from the State as pay for their services the sum of Five Hundred ($500.00) Dollars per annum, as provided by the constitution, and in addition thereto, and in lieu of the fees, commissions, and perquisites provided by law, shall receive from the State the sum of Ten ($10.00) Dollars for each of the first 350 days of every calendar year as compensation for attending examining trials, Habeas Corpus hearings, the sessions of the District Court of the district they represent, and for performing such other duties as imposed by law. The compensation provided for in this Act shall be paid monthly by the State upon warrants drawn by the

Hon. C. H. Cavness, Page 10

Comptroller of Public Accounts, and it shall not
be necessary for the District Attorney to file
any account with the District Judge or the Comp-
troller of Public Accounts. . .

"Sec. 2. That in each of said Judicial
Districts, the duly elected District Attorney
shall have the right, with the consent of the
Judge of said District Court to appoint an As-
sistant District Attorney who shall serve as
such Assistant District Attorney for the same
term as the District Attorney is elected, and
in case of a vacancy, the District Attorney,
with the consent of the District Judge of the
District, may make an appointment to fill out
the unexpired term. . . .

"Sec. 3. The assistant district attorney
provided for in Section 1 of this Act shall re-
ceive an annual salary of three thousand six
hundred dollars, to be paid monthly by the comp-
troller out of the funds appropriated for the
payment of the salaries and fees of the district
attorneys of the State of Texas or out of any
money not otherwise appropriated, said salary
to be paid upon the sworn account of such as-
sistant district attorney approved by the dis-
trict attorney and the district judge of said
district; and in addition to this salary the
assistant district attorney shall also be paid
the amount of expenses incurred by said assist-
ant district attorney in attending the courts of
other counties than his residence in the perform-
ance of his duties as such assistant district
attorney the same amount as is now paid district
attorneys out of the funds appropriated for the
payment of expenses of the district attorneys of
the State."

The 22nd Judicial District of Texas is composed of
the Counties of Austin, whose population, as shown by the Federal
Census of 1940, was 18,874, Hays, whose said population was 15,920,
Caldwell, whose said population was 25,160, Fayette, whose said
population was 29,965, and Comal, whose said population was 8,824,

Hon. C. H. Cavness, Page 11

making the total population of said judicial district 98,743, and bringing said district within the provisions of the last above-quoted statute.

Article III, Section 44, of the Constitution, provides as follows:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

It is our opinion that each and all of the appropriations referred to in your request for which we have pointed out statutes specifically creating and authorizing the official positions for which said appropriations were made were in compliance with said Art. III, Sec. 44, of the Constitution of Texas, therefore, that they were legal. Further, Art. V, Sec. 21, of the Constitution, and Art. 322, of Vernon's Annotated Civil Statutes, hereinabove set out, authorize each and all of the offices of district attorney involved herein, and the various statutes referred to legally create such official positions. Practically all of the statutes hereinabove set out which authorize the appointment of assistant district attorneys contain the provision that said assistant district attorneys shall have authority to perform all the acts and duties of the district attorney under the laws of this State. Those of said statutes where such specific authority is not given to assistant district attorneys authorize said assistant district attorneys to perform the services the district attorney is authorized to perform. Therefore, it is our opinion that each and all of said assistant district attorneys were legally authorized and that said appropriations were legal.

As to Item 3, the Supreme Court, in the case of Ex Parte Richards, et al, 155 S. W. (2d), 597, held that the

Hon. C. H. Cavness, Page 12

Legislature did not violate any provision of the Constitution in creating a criminal district court in and for the Counties of Nueces, Kleberg, Kenedy, Willacy and Cameron, therefore, that part of said Act creating said criminal district court which provides for a criminal district attorney is also valid. This holding has further support in the case of Hill County v. Sheppard, Comptroller, 178 S. W. (2d) 261, wherein the Supreme Court was distinguishing between a county attorney, a district attorney and a criminal district attorney and held as follows:

"It will be noted that the Constitution refers to a county attorney, a district attorney, and a criminal district attorney. What is meant by a 'criminal district attorney' as used in the Constitution, and what is the difference, if any, between that office and the office of district attorney, and is the office of criminal district attorney a constitutional office?

"The Constitution does not define the office of 'criminal district attorney.' Article V, Section 21, quoted above, in which the term was used, was first adopted in 1876. The Constitution of 1876 as well as the Constitution of 1866 and 1869 contain provisions authorizing the creation of criminal district courts under certain conditions. In 1883 the Legislature adopted an Act which contained a definition of criminal district attorney. That Act provided as follows:

"'When a resident criminal district attorney is elected and has qualified, and there is in the county of his residence, a county attorney, such county attorney shall cease to perform the functions of such office, and there shall be no county attorney in such county during the time there may be a resident criminal district attorney therein. By the term, criminal district attorney, is meant an attorney for a criminal district court.' (Italics by the Court)

"While this definition by the Legislature does not necessarily control this Court in construing the Constitution, yet since this statute was enacted by the Legislature near the time when the

Hon. C. H. Cavness, Page 13

Constitution containing the same term was adopted
by the people, the Act of the Legislature carries
great weight in determining what was meant by the
use of the same term in the Constitution. It is
unnecessary for us to here determine whether the
Legislature could create the office of criminal
district attorney for a court other than a crimi-
nal district court. That question is not before
us. It is sufficient to say that when the Consti-
tution is construed in the light of the statute
above quoted, it is our opinion that the term
criminal district attorney refers to a class or
kind of district attorneys, and that a criminal
district attorney is a district attorney within
the meaning of the Constitution.

"The office of District Attorney, including
that of criminal district attorney, is a constitu-
tional office, the duties and compensation of which
are provided for in Article V, Section 21, of the
Constitution above quoted."

It might be contended that the statutes hereinabove
referred to which authorize the appointment of assistant district
attorneys are invalid on the ground that they violate Article III,
Section 56, of the Constitution, which provides in part as follows:

"The Legislature shall not, except as other-
wise provided in this Constitution, pass any local
or special law, authorizing:

". . . .

"Creating offices, or prescribing the
powers and duties of officers in counties, cities,
towns, election or school districts; . . . "

This contention was overruled in our Opinion No.
0-5144, and a statute similar to those involved herein was held
to be constitutional and valid under the above provisions of
Article III, Section 56 of the Constitution, the following part
of which we here adopt and quote:

"Construing the above quoted provisions of
Article III, Section 56 of our State Constitution,

Hon. C. H. Cavness, Page 14

in the case of Commissioners' Court of Limestone County v. Garrett, 236 S. W. 970, Texas Commission of Appeals, the court said:

"'Section 56, Art. 3, was a part of the original Constitution of 1876. There is nothing in the language of that section suggestive of a limitation of the effect of the provision against creation of offices by local or special law to any class or classes of offices, nor is there a suggestion of such limitation in any other portion of the Constitution. The limitation refers to places only, and not to classes of officers. The places in which the creation of offices by special or local law is prohibited are counties, cities, towns, and election and school districts. It forbids the creation, by local or special act, of any office in any of those places.' (Underscoring ours)

"Under Article 5, Section 21, of our State Constitution, supra, the Legislature is given the power to create the office of district attorney in such districts as it may deem necessary and to define the powers and duties of such officers. This section of the Constitution would also authorize the Legislature to create the office of district attorney in a specific judicial district by its name or any other form of designation and by the same token it would authorize the Legislature to allow the district attorney of a particular named district to employ assistants.

"It is our opinion that our State Constitution does not prohibit the Legislature from enacting a local or special law creating the office of assistant district attorney. The Constitution does prohibit the creation of county, city, town, election district and school district offices by local or special law."

Article 25, Code of Criminal Procedure of the State of Texas, prescribes the duties of District Attorneys as follows:

"Each district attorney shall represent the State in all criminal cases in the district courts of his district, except in cases where he has been, before his election,

employed adversely. When any criminal proceeding
is had before an examining court in his district or
before a judge upon habeas corpus, and he is noti-
fied of the same, and is at the time within the
county where such proceeding is had, he shall rep-
resent the State therein, unless prevented by other
official duties."

Acts of the 47th Legislature, 1941, Ch. 148, p. 207, con-
tained the Judiciary Appropriation, a part of which was as follows:

"Be it enacted by the Legislature of the State
of Texas

"Section 1. That the several sums of money
herein specified or so much thereof as may be nec-
essary, are hereby appropriated out of any moneys
in the State Treasury, not otherwise appropriated,
for the purposes herein indicated as follows:

"   .  .  .

"For the Years Ending

| | August 31, 1942 | August 31, 1943 |
|---|---|---|
| "   .  .  . | | |
| "10. Compensation of one As-<br>sistant District Attor-<br>ney or one Special In-<br>vestigator for each of<br>the following Judicial<br>Districts: Thirtieth and<br>Seventy-second,at $1,800<br>per year | 3,600.00 | 3,600.00 |
| "11. Salary of Assistant District<br>Attorney in Forty-seventh<br>District | 2,510.00 | 2,510.00 |

"   .  .  .."

In the case of Terrell vs. Sparks, 135 S. W. 519, the
Supreme Court had under consideration the power of the Attorney
General to employ an attorney to assist him in performing certain
duties, said attorney not being an Assistant Attorney General and
the only authority for his employment being found in a bill ap-
propriating funds for said purpose. Sec. 1 of said appropriation
bill reads as follows:

Hon. C. H. Cavness, Page 16

"For the purpose of enforcing any and all
laws of the state of Texas, and for the purpose
of paying any and all necessary expenses in
bringing suits or paying expenses in prosecuting
same, there is hereby appropriated out of any
money in the state treasury, not otherwise ap-
propriated, the sum of $25,000.00 or so much
thereof as may be necessary, to be expended
under the direction of the Attorney General by
and with the approval of the Governor, and to
be paid upon warrants drawn by the comptroller
of public accounts on vouchers approved by the
Attorney General."

In holding that the Attorney General was authorized by
said appropriation bill to employ an attorney to assist in the
performance of said duties, the court laid down the following
principles of law which are applicable here:

"The next important question that arises in
the case is: Had Gov. Campbell and Atty. Gen.
Lightfoot authority under the statute to employ
Terrell as special counsel to assist the Attorney
General in the prosecution of the cases named and
other cases which might arise? The power to make
the contract must be derived from the statute it-
self; therefore we must construe its terms to as-
certain whether or not that authority is given.
For the rule of construction by which we are to
be governed, we copy from Sutherland on Statutory
Construction, 8 341, as follows: 'Whenever a
power is given by statute, everything necessary
to make it effectual or requisite to attain the
end is implied. It is a well-established prin-
ciple that statutes containing grants of power
are to be construed so as to include the author-
ity to do all things necessary to accomplish the
object of the grant. The grant of an express
power carries with it by necessary implication ev-
ery other power necessary and proper to the exe-
cution of the power expressly granted. Where the
law commands anything to be done, it authorizes
the performance of whatever may be necessary for
executing its commands.'

"By the terms of the statute of the Thirty-
First Legislature before copied, the duty is im-
posed upon the Attorney General and the power is

Hon. C. H. Cavness, page 17

conferred upon him to prosecute suits against those
who are unlawfully claiming the public lands of the
state, for it is evident from the terms of the act
that it was in the mind of the Legislature when it en-
acted this law that conditions required a vigorous
prosecution of the state's claims against those who
were infringing upon the rights in the public lands
of the state. In view of this duty, the language,
'and for the purpose of paying any and all necessary
expenses in bringing suits or paying expenses in
prosecuting same,' empowers the Attorney General,
with the concurrence of the Governor, to expend the
sum appropriated or so much thereof as may be neces-
sary to accomplish the purpose specified in the act,
and the cost of whatever might be necessary in the
discharge of the duties thus imposed upon him is in-
cluded in the term 'expense.' The second section of
the act shows that in the mind of the Legislature
there was an immediate necessity for the Attorney
General to make application of this fund to the pro-
tection of the public lands of the state. Suits were
authorized to be brought by the language, 'to pay
the expense of bringing suits and also in prosecut-
ing the same.' Out of this requirement there arose
the necessity and the power of said officers to do
the things that were required to be done in order to
institute and to prosecute those suits, and it re-
quires no argument to show that the services of at-
torneys were necessary to the performance of this
duty. . . ."

The law imposes certain duties upon a District Attorney.
In the performance of said duties, he may, or he may not, need the
services of someone else. When the Legislature passed the appro-
priation bill here under consideration, it is evident that it was
in the mind of the Legislature that the conditions were such that
the District Attorneys in the districts named were in need of as-
sistance in the performance of the duties placed upon them by law.
Therefore, even though it was not set forth in said appropriation
bill what the qualifications of said assistants should be, or
what duties they were to perform, said District Attorneys were
authorized by said appropriations to expend the sums appropriated,
or so much thereof as might be necessary for such purpose, in per-
forming the duties of their offices by employing the assistants
therein provided for.

809

There is no general statute creating the office of Assistant District Attorney that is applicable to all District Attorneys. There are numerous statutes creating the office of Assistant District Attorney and Assistant Criminal District Attorney that are applicable to districts specifically named or identified by other descriptions such as population brackets, or number of counties embraced therein, etc. It is our opinion that, where the only authority conferred upon the District Attorney of a designated district to appoint an Assistant District Attorney is found in an appropriation bill which makes an appropriation to pay the salary of an Assistant District Attorney, the assistant thus authorized to be appointed is not in fact an officer with all the powers and duties of his principal, because no such office has been, or can be thus, created by the Legislature. The mere appropriation by the Legislature of money for the payment of compensation to the incumbent of a specified position does not have the effect of creating an office, or of giving such incumbent the character of an officer. The only way an office can be created by the Legislature is by a statute duly passed for that purpose. Such an assistant as is here being considered is merely an employee, and not an officer since he is given none of the powers of his principal and is not authorized to perform any of the duties of his principal. Therefore, since this position is not an office and the person appointed thereto is only an employee, his compensation may properly be provided for in the appropriation bill, and such appropriation bill is sufficient authority for such appointment and for the State to pay the appointee the salary provided therein.

It is our opinion, therefore, that each and all of the appropriations hereinabove referred to were in all things legal, which conclusion makes it unnecessary for us to answer any of the other questions propounded by you.

Trusting that this satisfactorily answers your inquiry, we remain,

APPROVED JUN 17 1945

ATTORNEY GENERAL OF TEXAS

JWB/JCP

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Jas. W. Bassett
Jas. W. Bassett
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN