George N. ST. CLAIR et al., Appellants,

v.

**HARRIS COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 21 et al., Appellees.**

No. 538.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 1, 1971.

**546**

Gerald S. Gordon, Strickland & Gordon, Houston, for appellants.

Thomas D. McManus, Flowers & McManus, Channelview, for appellees.

BARRON, Justice.

Plaintiffs filed in the District Court of Harris County a class action against the defendant, Harris County Water Control and Improvement District No. 21 and its individual board members, seeking to enjoin the District's charging plaintiffs for water on the basis of the number of living quarters served per meter as opposed to charging solely by the volume of water consumed per meter. Plaintiffs sought a permanent injunction, upon final adjudication, to restrain the above conduct which they considered to be arbitrary, capricious, unreasonable, and in violation of Vernon's Tex.Rev.Civ.Stat.Ann. art. 7880–106. The defendants countered with a claim that the "per living unit" charge was imposed to correct an inequity in billing customers occasioned by the use of a single meter for multiple living units, resulting in their paying less for water service than other customers in the District. The District Court denied the temporary injunction, and the plaintiffs appealed to this Court to reverse that judgment and render judgment granting the injunction.

All of the following facts were stipulated:

The appellants represent a class of owners of properties located completely within the District. All have more than one user of water service per tract. Whereas prior to March, 1971, the District charged a uniform minimum rate of $2.50 per first 3,000 gallons, with descending rates for greater volumes, on the above date the following amendment to those rates became effective:

"$2.50 minimum charge and 3,000-gallon allowance be applied to *each separate living unit in multiple combinations served by one master meter.* All metered usage over and above the total mini-

mum allowance will be charged at the regular current rate." (Emphasis added).

255 out of 2,300 metered accounts within the District are affected by the above amendment. The per living unit rate has not been applied to hospitals, washaterias, car washes, filling stations, or motels but has been directed toward mobile .home parks, apartment projects, businesses with multiple occupants, residential property with multiple families, and residence and garage apartments. No debt, cost of operation and maintenance, or change in service necessitated the alteration in rates effected by the amendment. February and March water bills were introduced for several of the appellant owners of apartment projects, etc., and the difference between the two bills was in each case substantial. The increase amounted to $1,600.00 additional revenue to the District from the March billings.

On appeal, appellants urge four points of error: (1) violation of art. 7880–106 (although not strictly pleaded); (2) arbitrary and capricious action by the Water District Board; (3) absence of a reasonable classification or basis for the amended rate application; and (4) existence of a probable right in appellant currently suffering an injury and without a legal remedy.

■ The trial court is clothed with broad discretion when determining whether to grant a temporary injunction, and this Court's power to review the trial court's denial of a temporary injunction is limited to the narrow question of whether the action of the trial judge in so denying the injunction is an abuse of his discretion. Bolin v. Brazoria County, 381 S.W.2d 206 (Tex.Civ.App.-Houston 1964, no writ). Cases cited by appellants in their brief (all of which involve *granting* of temporary injunctions) acknowledge this established rule. An appellate court is not to substitute its discretion for that of the trial court. Callahan v. Lipscomb, 412 S.W.2d 346 (Tex.Civ.App.-San Antonio 1967, writ

ref'd n. r. e.). Thus, appellants' fourth contention, that injunction should have issued in order to protect the status quo until final determination of the rights involved, will not avail them here. This is not a crisis situation in which plaintiffs are undergoing constant irreparable harm, such as in the case of refusal of water service. The trial court refused to enjoin appellees and thus impliedly found no probable right suffering injury which no legal remedy could redress. This Court can but ask whether that refusal constituted an abuse of discretion by the trial judge. As the following discussion will demonstrate, we think that it did not.

■ Vernon's Tex.Rev.Civ.Stat.Ann. art. 7880–106 provides in part as follows:

"All such districts shall have authority to make, establish and collect maintenance and operation charges for the service they render which may be determined and fixed upon the basis of the quantity of water furnished or appropriate measure of the service rendered, and if based upon a use of water a fixed charge may be made as a minimum charge on all lands, *water connections* or other service entitled to receive and use same, and an additional charge may be made for the use of water in excess of that covered by the minimum charge." (Emphasis added).

It should be noted that the present controversy ostensibly does not involve the establishing of water rates—the rate charged by the District was set by the District's Plumbing Code well before this dispute, and those rates remain the same:

| First 3,000 gallons | Minimum | $2.50 |
| Next 8,000 gallons | Per 1,000 | $ .30 |
| Over 11,000 gallons | Per 1,000 | $ .25 |

At issue is the District's decision, through the amendment recited above, to charge the minimum $2.50 rate to each separate living unit in multiple living unit facilities served by a single meter. The effect of this decision, admittedly, was to raise the dollar

amount to be paid by multiple users for the same or even lesser volumes of water used. This result occurred because most multiple living units such as apartments or mobile homes use less than the 3,000 gallons per month for which the minimum charge of $2.50 is levied. Under the new application of the minimum rate an apartment complex owner can no longer pay a sum representing the actual aggregate volume of water consumed by all his apartments. He must now pay at least $2.50 per apartment, even though many, if not all, individual apartments may use less than 3,000 gallons per month.

The preceding remarks demonstrate that by altering the application of the existing rates, the District can create the same practical effect as "establishing" rates. Art. 7880–106 is silent in regard to changed application of existing rates. To conclude that the statute does not govern "application" of water rates would be to ignore the identical practical effect of applying old rates and "establishing" new ones. We can not assume that the legislature was blind to that effect and did not contemplate that water districts might alter the means of applying then-existing rates. It is more reasonable to assume that the provisions of art. 7880–106 do pertain to application of rates, at least insofar as they cause the same effect as establishing new ones. In the instant situation the extension of the $2.50 minimum to each individual living unit, particularly where it does in fact increase the billing amount for water consumed, is tantamount to the establishment of a new rate to those who own multiple units. If the users happen to consume a lesser aggregate volume of water than the sum of the number of users multiplied by 3,000 gallons, the rate to those users *is* different from the rate listed in the unamended Plumbing Code. And that is the case here.

If a new application of a rate is not to be considered in effect an establishment of a new rate, nonetheless, rules of statutory construction dictate the conclusion that the power reasonably to apply established rates is implied from the express power to establish rates. When a statute commands or grants anything, it impliedly authorizes whatever is necessary for executing its commands or whatever is indispensable to the enjoyment or exercise of the grant. Thus, the statutory grant of an express power carries with it, by implication, every incidental power that is necessary and proper to the execution of the power expressly granted. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519 (1911); 53 Tex. Jur.2d Statutes, Sec. 141 (1964).

By either interpretation of art. 7880–106, this particular application of the minimum charge, i. e., per living unit, is buttressed by the wording of the statute. The initial sentence provides that a minimum charge based upon use of water may be imposed upon, inter alia, "water connections". The ordinary signification shall be applied to words, except words of art or words associated with a particular trade or subject matter. Vernon's Tex.Rev.Civ.Stat.Ann. art. 10 (1954). It is the policy of courts to avoid giving a technical meaning to statutory words. Texas Power & Light Company v. Jacobs, 323 S.W.2d 483 (Tex. Civ.App.-Waco 1959, writ ref'd n. r. e.). "Water connections" is not a word or phrase in the plumbing trade as is, e. g., "coupling". The particular meaning depends upon, and must be determined by the context and subject matter. Lacy v. State Banking Board, 118 Tex. 91, 11 S.W. 2d 496 (Tex.Comm'n App., 1928, opinion adopted); City of Wichita Falls v. Evans, 410 S.W.2d 311 (Tex.Civ.App.-Fort Worth 1966, no writ). The wording of art. 7880–106 is general and accords a water district broad latitude in assigning bases upon which to bill for water supplied. The language expressly states "*all* . . . water connections. . . ." We think that this terminology and the statute considered as a whole allow the conclusion that a district can lawfully assess a minimum charge upon *individual living units* such as apartment or mobile homes in a complex.

Appellants' second and third points of error raise essentially the same point: The reasonableness of the District's minimum charge per individual unit. To appellants' contention that the per unit application of minimum rates is "unreasonable, arbitrary and discriminatory", attention is directed initially to City of Kermit v. Rush, 351 S.W.2d 598 (Tex.Civ.App.-El Paso 1961, no writ), in which case the court held that a city ordinance which required that each separate house, residence, apartment, structure, trailer house and/or mobile home should have a separate water meter *or pay a separate monthly minimum charge for water,* but which classified hotels and motels (as here) as single unit users obligated to pay only one minimum rate, did not arbitrarily and unreasonably discriminate against owners of apartment houses and trailer parks. This was the holding despite the fact that, as here, the cost and effort required of the city to supply water to a single meter was no greater than that necessary to supply water to meters at each individual unit. Although there was testimony in the present case that customers were not classified by the District, it is clear that by applying the minimum charge to individual units in apartment complexes, businesses, mobile home parks, and multiple occupant residences, but not to motels, hospitals, washaterias, car washes, and filling stations, the District did in effect classify its customers. That very classification was upheld as reasonable in City of Kermit, supra, and in Caldwell v. City of Abilene, 260 S.W.2d 712 (Tex.Civ.App.-Eastland 1953, writ ref'd).

The record contains ample evidence to support the reasonableness of the District's application of the $2.50 minimum rate. A board-appointed committee studied the matter of applying the minimum rate for about a year. Inequities existed among customers as to the amount paid for water. It was stipulated that 257 single resident customers used less than 3,000 gallons monthly but were compelled to pay $2.50 for the water they consumed. Yet, Nick Gianake, a member of the Board and a defendant in this case, testified that the committee discovered that owners of multiple units were paying on the average 49¢ or 50¢ per month per unit prior to the amendment. Gianake and William Jeff Bowen, Jr., also a Board member, both testified that this discrepancy was "unfair" and formed the reason for the change in application of the minimum rate. In the face of such existing inequities, we can not hold as a matter of law that the amendment adopted by the Board is unreasonable, arbitrary or capricious.

We think it noteworthy that the Plumbing Code assesses sewer charges "per residence". Appellant, George N. St. Clair, for one, has paid a per unit sewer charge on his apartments. There is no contention that this per unit charge is unreasonable, arbitrary or discriminatory. Similarly, we think the District's action in applying the minimum water rate per living unit was reasonable and the trial court did not err in refusing the temporary injunction.

The judgment of the trial court is affirmed.