Kenneth L. NIXON, Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 1539.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 16, 1977.

Rehearing Denied Jan. 18, 1978.

Randy Martin, James A. Moore, Houston, for appellant.

Kenneth L. Nixon, pro se on motion for rehearing.

Otis H. King, City Atty., Alan F. Levin, Senior Asst. City Atty., Dennis C. Gardner, Asst. City Atty., Houston, for appellee.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment upholding the dismissal of the appellant from the Houston Police Department.

Kenneth L. Nixon (Nixon or appellant) was suspended indefinitely from his position as a captain in the Houston Police Department on November 19, 1975. R. J. Clark, the Acting Chief of Police at that time, suspended Nixon by sending a letter to the Houston Firemen's and Policemen's Civil Service Commission (Commission), and by mailing a copy to Nixon in accordance with Tex.Rev.Civ.Stat.Ann. art. 1269m, § 16 (1963). In the letter, Chief Clark outlined the facts supporting his suspension of Nixon in a chronological narrative form. Chief Clark charged that Nixon had violated Civil Service and Houston Police Department Rules by engaging in an extramarital affair, both on and off duty, with the female clerk of Nixon's substation. Because of the tumultuous nature of the relationship, Nixon allegedly committed numerous acts of misconduct, including the installation of an electronic eavesdropping device on the clerk's home telephone.

Nixon filed a written appeal from his suspension with the Commission, in which he denied the allegations against him. Following a hearing, the Commission issued a formal order sustaining the suspension and permanently dismissing Nixon from the Department. Nixon appealed to the district court. At the conclusion of a trial de novo, the court found that the Commission's order was supported by substantial evidence. The trial court upheld the order of the Commission in all respects, therefore, and decreed that Nixon take nothing.

On appeal from the district court's judgment, Nixon assigns several points of error. He argues, initially, that R. J. Clark had no authority to suspend him. The record reflects that Chief of Police C. M. Lynn resigned in June 1975. Mayor Fred Hofheinz immediately appointed R. J. Clark to be "Acting" Chief of Police. Mayor Hofheinz testified that it was a customary practice to appoint "acting" heads of Police and Fire Departments in the interim between the resignation of a former Chief and the confirmation of a replacement by the City Council. The interim period in this case was from June 27, 1975 to January 20, 1976. One of the reasons for the delay, according to Mayor Hofheinz, was that R. J. Clark was hospitalized for over a month following a heart attack. When it became clear that R. J. Clark would be unable to serve in a permanent capacity as Chief of Police, Mayor Hofheinz appointed B. G. Bond. Chief Bond was confirmed by the City Council in January 1976. There is no evidence that the seven-month delay was intended to circumvent or undermine the appointment process.

Nixon argues that section 34–2 of the Houston City Code provides the only method by which a person may serve as Chief of Police. That section states:

There is hereby created the office of the chief of police in the police department of the city. The chief of police shall be appointed by the mayor and confirmed by the city council. Subject only to the orders and actions of the city council and mayor, the chief of police shall be the executive head of the police department. He shall have management of the department, shall exercise all of the functions assigned to the department, and shall carry out the provisions of law and of ordinances with respect to such functions.

Houston, Tex., Code of Ordinances § 34–2 (1958). Since R. J. Clark was not appointed by the Mayor and confirmed by the City Council upon assuming office in June 1975, Nixon contends that Clark was not the Chief of Police. Nixon argues, therefore, that Clark had no authority to order Nixon's suspension.

Nixon correctly states that there is no express provision, either in article 1269m or in the Houston City Code, for the appointment of an Acting Chief of Police. Neither is there any time limitation for the appointment and confirmation of a new Chief. Delays between the resignation of one Chief and the confirmation of a new one are unavoidable. Someone must assume the responsibilities of Chief of Police in the interim. Section 34–4 of the Houston City Code provides for such an assumption of responsibilities:

During the absence of the chief of police from duty of the inability of the chief of police to discharge his powers, authority, and duties, the chief inspector of the police department shall be in full and complete charge of all men and equipment in the department, and the chief inspector shall discharge and perform all powers, authority, and duties assigned to and vested in the chief of the police department.

Houston, Tex., Code of Ordinances § 34–4 (1958). This provision deals with the temporary absence of the Chief from his office, and not with a vacancy in the office of Chief following a resignation.

Whenever a power is given or a duty imposed by a city ordinance, everything necessary to make that power effectual or essential to the performance of that duty is conferred by implication. *Cf. Terrell v. Sparks,* 104 Tex. 191, 135 S.W. 519 (1911). The Mayor of Houston has no express authority under the City Code to appoint an Acting Chief of Police pending the appointment and confirmation of a permanent Chief of Police. The necessity for such power is clear, nevertheless, since the effectiveness of the Police Department and the safety of the public require the guidance of a Chief of Police at all times. Mayor Hofheinz was acting within the scope of his implied authority when he appointed R. J. Clark to be "Acting" Chief of Police. We hold, therefore, that Chief Clark had the power to order Nixon's suspension.

By his second point of error, Nixon alleges that he was denied due process of law during the Civil Service Commission hearing and the trial de novo because he was not allowed to cross-examine Robert Wilkinson, a radio news broadcaster. Nixon contends that news broadcasts by Mr. Wilkinson about Nixon's alleged misconduct initiated the investigation ordered by Chief Clark. Mention of the news broadcasts was made in the chronological recounting of Nixon's activities in Chief Clark's letter to the Commission, and transcriptions of the broadcasts were attached to the letter. Nixon states that because the broadcasts were a part of the letter of suspension, they were an evidentiary basis for the Commission's ruling.

At the trial de novo, Commissioner Alvin Henry testified that the news broadcasts were not considered by the Commission in making its decision since they were not a part of the charges in the case. Commissioner Henry also testified that Nixon's misconduct was independently established by the testimony of witnesses. We agree with the trial court that there was substantial evidence to support the Commission's determination that Nixon violated Houston Firemen's and Policemen's Civil Service Commission Rules and Houston Police De-

**450**

partment Rules. The mere fact that the news broadcasts may have initiated the investigation does not mean that the broadcast transcripts were relevant as evidence of Nixon's misconduct. The trial court did not err in excluding cross-examination of Mr. Wilkinson regarding the transcripts.

By his third point of error, Nixon complains that the trial court erred in finding that the letter of suspension from Chief Clark to the Commission complied with article 1269m, which states in pertinent part:

> The written statement above provided to be filed by the department head with the Commission, shall not only point out the civil service rule alleged to have been violated by the suspended employee, but shall contain the alleged acts of the employee which the department head contends are in violation of the civil service rules. It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him.

Tex.Rev.Civ.Stat.Ann. art. 1269m, § 16 (1963). In support of his assertion that Chief Clark's letter did not comply with article 1269m, Nixon relies upon *City of San Antonio v. Poulos,* 422 S.W.2d 140 (Tex.Sup. 1967). There, the supreme court held that a letter of suspension was insufficient under section 16 of article 1269m. As in the present case, the letter of suspension listed the specific rules allegedly violated by a police officer, followed by a statement of facts in support of the allegations. The court stated that the letter was insufficient because it failed to allege sufficient facts to substantiate the charges. The supreme court observed that one reason that the San Antonio Police Chief erred in failing to allege sufficient facts was that he recited the alleged violations and facts separately; he did not specify the particular facts he relied upon to establish each individual violation.

■ Chief Clark's letter, however, charged Nixon with fourteen violations of the Houston Firemen's and Policemen's Civil Service Rules and seventeen violations of the Houston Police Department Rules. The letter then described Nixon's alleged acts of misconduct in a chronological narrative fashion, spanning twelve single-spaced typed pages. Had Chief Clark listed each alleged violation, followed by the facts relied upon to prove that violation, the letter would have been redundant, overlong and extremely confusing. Chief Clark's letter of suspension sufficiently apprised Nixon of the charges against him and the facts relied upon to prove those charges. The trial court did not err, therefore, in holding that the letter complied with section 16 of article 1269m. *Walker v. City of Houston,* 466 S.W.2d 607, 611 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ).

■ Nixon assigns as his final point of error the trial court's finding that the Commission's final order met the requisites of article 1269m. Nixon argues that the order is invalid because it refers to an invalid letter of suspension. We reject this argument for reasons already stated. Nixon also complains that the Commission made no determination of the truth of the specific charges filed against him, as required by section 16 of article 1269m. The order states that "each of the remaining charges contained in the letter of indefinite suspension . . . [is] in all things true and correct . . . ." The Commission's failure to set out detailed findings does not void its order of dismissal. *City of Houston v. Melton,* 163 Tex. 294, 354 S.W.2d 387 (1962). We hold that the Commission's order complied sufficiently with the requirements of section 16 of article 1269m.

Appellant's points of error having been fully considered and overruled, the judgment of the trial court is hereby affirmed.

*Affirmed.*